# Shirley *v*. State.

### *Assault With Intent to Murder.*

[DECIDED FEB. 8, 1906, 40 So. 269.]

1  *Criminal Law; Appeal; Judgment Entry.*—Although the judgment entry shows no formal adjudication of guilt, upon the verdict, yet, if the minute entry shows a judgment of sentence by the court in accordance with the verdict, this imports sufficiently a judgment of guilt, and is such a judgment of guilt as will support an appeal.

2.  *Indictments; Objections to Formation of Grand Jury.*—The failure of the minute entry to show that a foreman of the Grand Jury was appointed as is required by § 5022, and the fact that the number of Grand Jurors was reduced to 14, and that § 5023 was not complied with in making up the deficiency, went to the formation of the grand jury, and falls within the curative terms of § 5289, Code 1896, and motion to quash the indictment on these grounds was properly overruled.

3  *Criminal Law; Assault with Intent to Kill; Evidence; Previous Difficulty.*—Evidence of a previous difficulty is admissible in a prosecution for assault with intent, to show motive, malice and intent; and evidence of the length of time ill-feeling had existed between the parties was admissible for the same purpose.

[Shirley v. State.]

4  *Same; Evidence; Res Gestae.*—An exclamation by one looking on just before the shot was fired, "Look! there is Issac and Jesse going to shoot us!" is competent as forming a part of the *res gestae.*

5.  *Same; Evidence Taken on Preliminary Hearing; Admissibility.*—Where it is shown that a witness, who was examined on the preliminary hearing, and whose evidence was taken down and subscribed by him, lives in another state, and that when last seen was at his home in such State, lays a su__cient predicate for the introduction of the written evidence of such witness taken at the preliminary hearing.

6.  *Witness; Cross Examination.*—It is proper to allow the State, upon cross examination, to ask a witness for defendant who had testified that a state's witness had told him just after the shooting that she saw only one person and did not know who it was, if witness had testified at the preliminary hearing to anything he had heard the witness say.

7.  *Criminal Law; Argument of Counsel.*—Argument which states fairly inferences to be drawn from any fact in the case, is proper.

8  *Same; Trial; Taking Written Evidence to Jury Room.*—It is within the discretion of the court to permit evidence taken down on preliminary trial and introduced on the trial to be carried into the jury room by the jury while considering the case.

9  *Same; Instructions.*—Instructions requested which require proof of guilt beyond all doubt, or which require the jury to be convinced that defendants could not be innocent, or which require the jury to be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but wholly inconsistent with every other rational conclusion, are properly refused, as requiring a too high degree of proof.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

On the trial the State offered to introduce the written testimony of J. P. Klausen, taken down at the preliminary hearing and subscribed by him. As a predicate for the introduction of this testimony ,the State offered D. K. Smith, who testified that he knew J. P. Klausen, who testified on the preliminary trial of the defendants, before judge Stallworth; that when he so testified, Klausen was a resident citizen of the State of Florida; that since the preliminary trial witness had visited Klausen at his home in Florida, and that Klausen lived in Flor-

ida the last time witness had known of him, although he
did not know where he was at the particular time of this
trial.   Upon this predicate, the trial court permitted
the written testimony to be read to the jury.   The so-
licitor in his argument in commenting on the testimony
stated:   "That the husband was dead, and had crossed
the river."   Defendant objected to this; the court over-
ruled the objection.   The defendant requested the court
to give the following charges which were refused by the
court:—

B.   The court charges the jury that before you can con-
vict any or all of the defendants in this case, you all, and
each one of you, must separately and individually be-
lieve from the evidence beyond all doubt that they are
guilty as charged in the indictment, before you can con-
vict any or all of them for assault with intent to murder,
and if you do not so believe from the evidence then you
must acquit the defendants of assault with intent to
murder.

5.   The court charges the jury that it is your duty to
weigh all the evidence in the case, and if after looking
at and weighing all the evidence in the case, you can say
that you have an abiding conviction that the defend-
ants cannot be innocent, you should acquit the defend-
ants.

7.   The court charges the jury that before you can
convict the defendant, you must be satisfied to a moral
certainty not only that the proof is consistent with the
defendant's guilt, but that it is wholly inconsistent with
every other rational conclusion, and unless the jury are
so convinced by the evidence of the defendant's guilt
that you would each venture to act upon that decision
in matters of the highest concern and importance to his
own interests, then you must find the defendants not
guilty.

At the conclusion of the argument and charge of the
court, the solicitor handed the written testimony of J.
P. Klausen to the jury.   The defendant objected to its
being taken out by the jury on the ground that 'it was
read to the jury during the trial, and also on the ground
that on the back of this same paper was the testimony
of other witnesses.   The court, after erasing with pencil

the evidence of the other witnesses and instructing the jury that they were not to consider the erased evidence for any purpose whatever, and that it was no part of the evidence before them, permitted the jury to take out to their room the written evidence of Klausen. The other facts sufficiently appear in the opinion.

STALLWORTH & BURNETT, and JAMES A. STALLWORTH, for appellant;—insisted that the motion to quash the indictment because the minutes of the court failed to show the appointment of a foreman of the grand jury by the court should have been granted.—§ 5022 of the Code of 1896. And for the further reason that the number of grand jurors was reduced below 15, and the panel not completed as required by law.—§ 5023, Code of 1896. That the record ought to affirmatively show the organization of the grand jury, and the judgment, amended as it was *nunc pro tunc,* was not made in time to cure that defect in this case.—*Palmer v. State,* 41 Ala. 417; *Berry v. State,* 41 Ala. 126; *Cross v. State,* 63 Ala. 40; *Dotson v. State,* 88 Ala. 208.

MASSEY WILSON, Atty. Gen. for State, insisted;—that the motion to quash the indictment fell within the curative term of § 5269 of the Code of 1896 and should not have been granted.—*Dunn v. State,* 39 So. 147; *Billingslea v. State,* 68 Ala. 489; *Davis v. State,* 92 Ala. 220; *Tanner v. State,* 92 Ala. 1; *Welch v. State,* 96 Ala. 92; *Germolgez v. State,* 99 Ala. 216; *Linehan v. State,* 113 Ala. 70; *Compton v. State,* 117 Ala. 56; *Kitt v. State,* 117 Ala. 213; *Stoncking v. State,* 118 Ala. 68; *Thompson v. State,* 122 Ala. 12; *Dotson v. State,* 88 Ala. 208.

The court had a right to amend the judgment *nunc pro tunc.*—*Ex parte Jones,* 61 Ala. 399. It was not necessary for the court to give notice to these appellants that he was about to amend the judgments *nunc pro tunc.*—*Nabers v. Meredith,* 67 Ala. 333; *Ware v. Kent,* 123 Ala. 427; *Fidelity Co. v. Mobile,* 124 Ala. 144. In the absence of a showing to the contrary, the presumption will be indulged that the court complied with the law in completing the grand jury.—*Washington v. State,* 81 Ala. 35; *Stewart v. State,* 137 Ala. 32. It was proper to show a former difficulty.—*Pitts v. State,* 140 Ala. 70;

[Shirley v. State.]

*Martin v. State,* 77 Ala. 1. The exclamation made by the child just prior to the shooting was properly admitted.—*Wesley v. State,* 52 Ala. 182; *Martin v. State,* 77 Ala. 1; *Harris v. State,* 96 Ala. 24; *Campbell v. State,* 133 Ala. 81; *Plant v. State,* 140 Ala. 52. The question to the witness Morris on cross examination was properly permitted.—*Brown v. State,* 76 Ala. 61. Charge B. was properly refused.—*Perry v. State,* 91 Ala. 83; *Hall v. State,* 122 Ala. 89; *Wilson v. State,* 140 Ala. 43. Charge 5 was also bad.—*Coleman v. State,* 59 Ala. 52. Charge 7 has been frequently condemned.—*Pitts v. State,* 140 Ala. 83. The court committed no error in permitting the jury to take out the written testimony of Klausen. —*Smith v. State,* 39 Ala. 329.

DENSON, J.—At the fall term, 1903, of the circuit court, held for the county of Monroe, Isaac Shirley, Jesse Shirley and Joseph Shirley were separately indicted for an assault with intent to murder Jim Smith.

The cases were tried at an adjourned term of the court held in July and August, 1905. By an agreement made between the solicitor and counsel for the defendants the three cases were tried jointly. The record shows that Jesse and Isaac were convicted and each sentenced to the penitentiary for a term of twenty years, they appealed.

The record fails to show a formal adjudication of the defendants' guilt upon the verdict rendered by the jury. But the minute entry shows a judgment of sentence by the court in accordance with the verdict. It has been held by this court that this sufficiently implies the judgment of guilt and is a judgment of conviction which will support an appeal.—*Ex parte Robinson,* 123 Ala. 103, 26 So. 645; *Tolbert's case,* 140 Ala. 96, 37 So. 78; *Drigger's case,* 123 Ala. 46, 26 So. 512; *Wilkinson's case,* 106 Ala. 28, 17 So. 458. Following these authorities it must be held that the judgment is sufficient.

Before entering on the trial the defendants moved a quashal of the indictments and that they be stricken from the files. The motion was rested on the fact that the minute entry showing the organization of the court at the fall term, 1903, the term at which the indictments

were preferred, failed to show that a foreman of the grand jury was appointed as required by section 5022 of the Code. And upon the further ground that the number of the grand jurors at the said term were reduced to fourteen and section 5023 of the Code was not complied with in making up the deficiency. The motion was overruled. The defects in the organization of the grand jury pointed out in the motion to quash the indicements went to the *formation* of the grand jury. Such defects fall within the curative terms of section 5269 of the Code as construed in *Billingslea's case,* 68 Ala. 486, consequently the court properly overruled the motion to quash the indictment.—*Phillips' case,* 68 Ala. 469; *Thompson's case,* 122 Ala. 12, 26 So. 141; *Dunn's case,* 39 So. Rep. 147; *Hall's case,* 134 Ala. 90, 32 So. 750.

This renders it unnecessary to consider any question raised on the rulings of the court on the admissibility of evidence on the trial of the motion to quash and on the *nunc pro tunc* proceedings.

The evidence tended to show, that Jim Smith, the person named in the indictment, was shot in his house on the night of August the 8th, 1903, while he and his family were at the supper table, and that it was a bright moonlight night. The wife of Smith, *inter alia,* testified that she heard the dog bark; that she got up and went to the door and saw Isaac and Jesse Shirley standing in the yard; that the moon was shining bright; that she saw them plainly; they had guns; two shots were fired close together; that her husband was shot; that one shot struck her little daughter in the arm and one struck her. This evidence being before the jury, it was competent for the state to show by the witness that there had been a previous difficulty between the defendants and Jim Smith, as tending to show motive, malice and intent of the defendants. The court properly allowed the witness to testify that there was such previous difficulty.

Evidence which tended to show how long ill feeling had existed between Jim Smith and the defendants was relevant and legal, and the objection to such evidence was properly overruled.

Mrs. Smith having testified that the parties who did

the shooting were standing about thirty-five yards from the dining room door, the court permitted her to testify, against the defendant's objection, that about the time the gun fired her daughter, Mattie, who was present, exclaimed, hold! look!! look!!! there is Uncle Isaac and Uncle Jesse going to shoot us. It was subsequently shown that Mattie looked out of the door and saw her uncles, Isaac and Jesse standing in the yard. The exclamation was a part of the *res gestae* and was properly admitted.—*Dismuke's case,* 83 Ala. 287, 3 So. 671; *Plant's case,* 140 Ala. 52, 37 So. 159.

On the predicate laid, the evidence of Klausen, given on the preliminary trial, was properly admitted.—*Lowe's case,* 86 Ala. 47, 5 So. 435; *Watkin's case,* 133 Ala. 88, So. 435; *Dennis' case,* 118 Ala. 72, 23 So. 1002; *Wheat's case,* 110 Ala. 68, 20 So. 449; 133 Ala. 1, 32 So. 158; *Wilson's case,* 140 Ala. 43, 37 So. 93.

The solicitor was properly allowed to ask the defendant's witness, Morrison, on cross-examination, if he testified on the preliminary trial as to any thing he heard Mattie say as to who shot her father. The witness had testified that on Sunday morning after the shooting on Saturday night, Mattie told witness that she saw only one person and did not know who it was. The failure of witness to give evidence of this fact on the preliminary trial was a proper circumstance to be considered by the jury in weighing his evidence. Besides, the question fell within the latitude allowed on the cross-examination of a witness.—*Stoudenmire v. Williamson,* 29 Ala. 558.

The only defense was that of *alibi,* and the evidence introduced by the defendants tended to support it. The evidence tended to show that Jesse and Isaac Shirley spent the week before the shooting together. The solicitor in his argument after stating the above tendency of the evidence said to the jury: "I submit that they then formed the conspiracy to commit the act." The expression only amounted to an inference and was within the bounds of legitimate argument.—*Cunningham's case,* 117 Ala. 59, 23 So. 693. There was evidence from which it might have been inferred that Jim Smith, the injured man, was dead, hence, the court committed no error in not excluding from the jury the remarks of the solicitor

relating thereto.

It is sufficient to say of charge B in the defendants' series, that it required the jury to be convinced of the guilt of the defendants beyond all doubt. This required a degree of certainty beyond that fixed by law.

Charge 5 was properly refused. It required an acquittal on the hypothesis that after weighing the evidence the jury was convinced that the defendants could not be innocent.

Charge 7 has been so frequently condemned as to require no further. comment.—*Allen's case,* 111 Ala. 80, 20 So. 490; *Picken's case,* 115 Ala. 42, 22 So. 551; *Roger's case,* 117 Ala. 9, 22 So. 666; *Amos' case,* 123 Ala. 50, 26 So. 524.

There was no error committed in allowing the written evidence of Klausen to be carried out by the jury. If it was not a matter of right the state had, under section 3329 of the Code, to have the jury carry the written evidence with them. it was at least a matter that rested in the discretion of the court.

There is no error in the record prejudicial to the defendants and the judgment appealed from is affirmed.

Affirmed.

HARALSON, TYSON and DOWDELL, JJ., concurring.