[Campbell v. The State.]

# Campbell *v.* The State.

## *Murder.*

(Decided June 1, 1915.   69 South. 322.)

1. *Appeal and Error; Harmless Error; Evidence.*—The exclusion of testimony is harmless where similar testimony has been received without objection.

2. *Homicide; Evidence.*—Where a witness had testified that defendant had attended the funeral of deceased, the fact that he did so in company with relatives of deceased, was properly excluded as forming no part of the res gestæ.

3. *Same.*—Evidence as to the whereabouts of defendant on the afternoon prior to and wholly unconnected with the offense, was immaterial and inadmissible.

4. *Witnesses; Examination; Impeachment.*—On cross-examination a witness may be examined as to whether he was intoxicated at the time the event occurred about which he was testifying.

5. *Homicide; Evidence.*—Where the state's evidence showed that the killing was intentional, and defendant had offered no testimony that it was an accident resulting from the striking of the hammer of his gun on the facing of the door in which he was standing, the fact that there was a scar on the doorfacing where defendant stood, was not relevant and was properly excluded.

6. *Witnesses; Examination.*—Defendant's counsel was properly denied permission to ask defendant whether he shot deceased on purpose, since the question was leading; nor could defendant testify as to such matters since it related to his undisclosed motives or intentions.

7. *Homicide; Manslaughter.*—Where defendant was intentionally pointing his gun at deceased, but did not intend to shoot him, and the killing was accidental, he was guilty of at least involuntary manslaughter.

8. *Charge of Court; Ignoring Evidence.*—Charges which ignore a consideration by the jury of all the evidence, and confines them to a consideration of only a part, are bad.

9. *Same; Assuming Facts.*—It is not error to refuse a charge which assumes the existence of a fact, although its existence was not in dispute

10. *Same; Argumentative.*—A charge asserting that the jury was not selected and placed in the jury box to convict, but to try the case under the evidence and law, is argumentative.

11. *Same; Covered by Those Given.*—Charges which are substantially covered by written charges given are refused without error.

[Campbell v. The State.]

12. *Homicide; Instructions.*—Where there was evidence tending to show the guilt of defendant, of a higher degree of manslaughter than manslaughter in the second degree, a charge reducing the proposition to one of defendant's guilt of manslaughter in the second degree was properly refused.

13. *Same; Manslaughter; Liability.*—Although accused was not pointing the gun at deceased when he accidentally shot him, yet if he intentionally pointed the gun at others he is guilty of involuntary manslaughter.

APPEAL from Chambers Circuit Court.

Heard before Hon. S. L. BREWER.

Raymond Campbell was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The facts sufficiently appear. The following charges were refused the defendant: (1) If, after considering the evidence in this case, the jury have a reasonable doubt as to whether the killing of Corley was the result of an accident, you should find the defendant not guilty.

(2) If the jury believe from the evidence that the killing of Corley was the result of an accident, you should find the defendant not guilty.

(3) Same as 1.

(4) Before the jury can convict the defendant, each member of the jury must be convinced by the evidence beyond a reasonable doubt that the defendant intentionally killed Corley.

(8) If the jury believe that the gun was accidentally discharged and killed Corley, you should find the defend not guilty.

(9) If the evidence fails to show any motive for the defendant to kill Corley, and if from such absence of proof of motive the jury has a reasonable doubt of the guilt of the defendant, they should find him not guilty.

(10) If the jury have a reasonable doubt of the guilt of the defendant growing out of any part of the evidence, you should find the defendant not guilty.

(12) Flight of the defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it, whether a consciousness of guilt, and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other or more innocent motive, and the jury may look to the fact that he left under the instructions and command of his father.

(14) You are not selected and placed in the jury box to find a verdict of guilt, but to try this case under the evidence and the law as laid down by the court for your guidance, and if the evidence in this case thus applied fails to convince you beyond a reasonable doubt, then it is your sworn duty to acquit the defendant.

(8A) Unless the jury believe from the evidence that at the time the defendant shot Corley, the defendant was pointing or aiming the gun at Corley, they cannot find the defendant guilty of murder or manslaughter in either degree.

STROTHER, HINES & FULLER, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

THOMAS, J.—The appellant, as defendant below, was indicted for the murder of one Eugene Corley, and was convicted of manslaughter in the first degree, and given a sentence of five years.

It appears that on the night of the homicide, and about half an hour prior thereto, the deceased and the defendant, who were first cousins and on the friendliest of terms, were, together with two brothers of defendant and one Walton, at the home of a relative of

defendant and deceased, where they all indulged, more or less, in "drinking" and amusements; that the defendant in good humor and friendly to all left this home prior to the others, saying as he left that he was going over to his grandfather's and spend the night, which was some distance up the road. He stopped, however, en route at the house of a negro woman, and, finding her door not latched, pushed it open and went inside, where the woman and her girls were in bed. The woman, who did not know or could not tell who the defendant was, came out of the house and sent word by a negro man who was passing the road to Mr. Campbell (at whose home the defendant had shortly before left his companions) to come down and get a "white man" out of her house. These companions, including deceased, proceeded with Mr. Campbell immediately to the woman's house, not knowing that defendant was the person within who had caused the alarm. As they approached the house the defendant from within called out aloud three times, "Halt!" and just as the advancing parties were reaching the house, he (defendant) took up a single-barrel shot gun then in the house, and, according to the state's witnesses, stuck the muzzle through the crack of the door, which was partially open, and fired just as deceased was walking up the steps, producing the wound from which the latter died. Defendant and his witnesses claim that the shooting was accidental; that defendant had no purpose in seizing the gun to shoot any one, and was not pointing it at any one, but merely had it in his hands, when deceased on reaching the door grabbed it, and that defendant, in pulling it back, accidentally struck the door facing with the hammer of the gun, leaving a scar on the door facing and causing the gun to discharge.

Defendant, after the shooting, assisted in ministering to deceased, who expired in a few moments, but defendant made no explanation at the time as to who did the shooting or as to how it occurred. Subsequently, and on the same evening, defendant took the father of deceased, who had come to the scene of the killing, home in defendant's buggy, and on the way home explained, as defendant admitted on the stand, to the father, who then did not know who killed deceased or how it occurred, that he (defendant) likewise did not know who did the shooting, since, he said, it happened while he (defendant) was coming up to the house with the other boys and before he reached it. Other persons who were not present at the killing testified that defendant told them that night that a negro killed deceased. The next day the defendant attended the funeral of deceased, and the following day he, who was a youth of 19 years, left the state, not of his own volition, however, as the undisputed evidence shows, but at the solicitation of his father, who furnished him the money and advised him to leave until the matter could be looked into further.

(1) The court sustained an objection by the solicitor to the following questions propounded by defendant's counsel to one of the state's witnesses on cross-examination: "Is it not a fact that they [meaning defendant and deceased] appeared to be the very best of friends all the time?" There was no injury, if error, in sustaining the objection to the question, because the witness had already stated that they were cousins, and "were friendly, and that there was no kind of trouble or feeling between them," and because other witnesses, both for the state and for the defendant, subsequently stated practically and in effect the same thing, and there was no dispute whatever but what defendant and deceased were on the best of terms.

(2) On cross-examination, after a witness for the state had. testified, without objection from the solicitor, that defendant attended the funeral of deceased, the defend-ant's counsel sought to draw out the further. fact, to which the solicitor objected, that defendant attended that funeral in company with the sisters of deceased. The court committed no error in sustaining the solicitor's objection. The fact, if it be a fact, that defendant at-tended the funeral of deceased, and did so in company with the sisters of deceased, constituted no part of the res gestæ of the killing, and the evidence of it, so far as it related to the acts of defendant, was objectionable as being entirely a self-serving act on his part, and, so far as it related to the acts of the sisters of deceased, was entirely immaterial, since any recognition on their part, express or implied, of defendant's innocence, was not binding on the jury, who alone were charged with the duty and responsibility of determining the guilt or innocence of defendant, and this upon the evidence, and not upon the opinions of others, however closely related those others who entertained the opinion might be to the deceased, and however contrary to what might be considered their own interest that opinion might be, and however deliberately it may have been formed. We may add, however, par parenthesis, that here that opin-ion was very likely not even deliberately formed, and was very likely formed on the same misrepresentation of the facts as was admittedly made by defendant to deceased's father before mentioned.

(3)    It is in no way made to appear, and we are at a loss to understand, how it was material to the inquiry here whether or not the witness Dave Campbell saw the defendant at Waverly on the afternoon before the kill-ing, as to what defendant did there, as to when the wit-

ness left there, and as to where the witness went after leaving there that afternoon; hence we cannot affirm that the court committed error in sustaining the state's objections to defendant's questions seeking to ascertain these facts.—*Sellers v. State,* 7 Ala. App. 84, 61 South. 485; *Bluett v. State,* 151 Ala. 41, 44 South. 88.

(4) The fact that a witness was under the influence of liquor at the time he is testifying about is a material inquiry for the party against whom he is testifying; consequently the court did not err in permitting the state to ask defendant's witness Ben Campbell on cross-examination if he and the others who were witnesses, and who were with him at the time testified to, were not "drinking," and to show the extent thereof, at such time or shortly before.—*Campbell v. State,* 23 Ala. 44; *Birmingham Ry. & E. Co. v. Mason,* 144 Ala. 390, 39 South. 590, 6 Ann. Cas. 629; *Poole v. Poole,* 33 Ala. 145.

(5) The defendant, before offering any evidence tending to show that the shooting was an accident and at a time when the only evidence before the jury was evidence tending to show that the shooting was intentional, undertook to prove that there was a scar on the door facing, as before mentioned, where defendant stood at the time of the shooting. The relevancy of this evidence was not apparent at the time it was so offered, and the court properly declined to let it in until later, when defendant offered some evidence tending to show that the shooting was an accident and tending to connect the scar with such accident.

(6, 7) Nor did the court commit error in sustaining the state's objection to this question propounded to defendant, as a witness for himself, by his counsel, to wit, "Did you shoot deceased on purpose?" since, though

[Campbell v. The State.]

the state might have asked such question on cross-examination, it was not permissible for defendant's counsel to do so, because the witness was defendant's witness, and the question was not only leading, but called for the undisclosed or uncommunicated motives of the witness.—*Linnehan v. State,* 120 Ala. 293, 25 South. 6.

What we have said is sufficient without further discussion to dispose of, adversely to defendant, all questions raised on the trial pertaining to the rulings of the court in the admission and rejection of evidence.

(8)   A number of written charges were given and a number refused to defendant.

Refused charges 1, 2, 3, 4, and 8, and 9 were properly refused, if not for other reasons, because each ignored the question of whether defendant was intentionally pointing the gun at deceased, which the state's evidence tended to show.   If he was, then he would be guilty of at least involuntary manslaughter, even though the firing of the gun was without purpose or motive, but was accidental.—*Johnson v. State,* 94 Ala. 41, 10 South. 667; *Sanders v. State,* 105 Ala. 4. 16 South. 935; *Fitzgerald v. State,* 112 Ala. 34, 20 South. 966.

(9)   Refused charge 10 was bad in ignoring a consideration by the jury of all the evidence and in confining them to a consideration of only a part.—*Hurd v. State,* 94 Ala. 100, 10 South. 528; 1 Mayf. Dig. 174, § 21.

(10)   Refused charge 12, if not also faulty as being argumentative, was faulty in assuming that defendant "left under the instruction and command of his father." The lower court cannot be put in error for refusing a charge which assumes the existence of a fact, even though the evidence as to the fact is not in dispute.

(11)   Refused charge 14 was properly refused as being argumentative in the first part of the charge.—1 Mayf. Dig. 173, § 18.

(12)   Refused charge 4A was covered by given charge 1A.

(13)   Refused charge 5A was the affirmative charge as to murder in the first degree, murder in the second degree, and manslaughter in the first degree, reducing the proposition before the jury to one of defendant's guilt or innocence of manslaughter in the second degree, and was properly refused, not only because there was evidence tending to show defendant's guilt in a higher degree (*Fitzgerald v. State*, 112 Ala. 34, 20 South. 966), but also because the charge, as worded, ignored manslaughter in the second degree, and was calculated therefore to mislead the jury, as pointed out in the following cases: *Stoball v. State*, 116 Ala. 455, 23 South. 162; *Williams v. State*, 161 Ala. 58, 50 South. 59.

For the same reasons charges 6A and 7A were properly refused.

(14)   Refused charges 8A and 9A were practically identical, and were properly refused as calculated to mislead the jury into believing that, unless the defendant was pointing the gun specifically at deceased, he could not be convicted of any degree of homicide, whereas the law is that, if he was intentionally pointing the gun at any one or all of the advancing party at the time of the shooting, he was engaged in an unlawful act, and if, while so engaged, the gun was discharged and killed deceased, defendant would be guilty of at least involuntary manslaughter, although the discharge of the gun was accidental, and although it was being pointed at another, and not specifically at deceased.—*Johnson v. State, supra; Sanders v. State, supra.*

We need not consider, therefore, whether there was or not any evidence in the case tending to show gross carelessness, which, if there was, would also render the charges faulty.—*Bynum v. State,* 8 Ala. App. 79, 62 South. 983; *Harrell v. State,* 160 Ala. 91, 49 South. 805.

As we find no error in the record, the judgment of conviction is affirmed.

Affirmed.