173 So. 875

# MORSE v. STATE.

## 6 Div. 35.

Court of Appeals of Alabama.

April 13, 1937.

Jim Gibson, of Birmingham, for appellant.

448

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This appellant was charged, by indictment, in the lower court, with the offense of murder in the first degree in that "he unlawfully and with malice aforethought, killed Emma Watts by stabbing her with a knife," etc. In answer to the indictment he interposed his plea of "not guilty."

The trial resulted in the conviction of the defendant for the offense of manslaughter in the second degree, and the jury returned the following verdict: "We the jury find the defendant guilty of manslaughter in the second degree as charged in the indictment, and fix his punishment at one year hard labor for the county, and assess a fine of $250.00 dollars."

Under the law a defendant may be convicted for the offense of manslaughter in the second degree, if the evidence warrants it, under an indictment charging him with murder in the first degree. The statute provides, when the indictment charges an offense of which there are different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, or of an attempt to commit the offense charged; and the defendant may be found guilty of any offense which is necessarily included in that with which he is charged, whether it be a felony or a misdemeanor. Code 1923, § 8697.

Here, as stated, the defendant, under an indictment charging him with murder in the first degree was convicted of manslaughter in the second degree. The verdict of the jury operated as an acquittal of the defendant of the higher degrees of homicide charged in the indictment, which had been submitted to the jury for its consideration. The question as to whether or not there was any evidence in this case tending to constitute the offense of manslaughter in the second degree, and whether the verdict rendered was an intelligent one under the evidence, or that it was not responsive to any evidence in the case, is not presented for our consideration, as such question was not raised upon the trial and no ruling of the court was invoked in this connection. No special charge was requested as to manslaughter in the second degree, nor was there a motion for a new trial. The jurisdiction of this court in cases of this character is appellate only, and review here is limited to those matters upon which action or ruling at nisi prius was invoked or had. Woodson v. State, 170 Ala. 87, 54 So. 191. Whatever merit there may be in this question cannot, for the reasons stated, avail this appellant.

The evidence in the case disclosed, without dispute, that Emma Watts, the deceased named in the indictment, came to her death as a result of an incised wound in her breast. There appears to have been no eyewitness as to how the death wound was inflicted or by whom, except the defendant, who strenuously denied that he did it. His testimony as to this tended to show that deceased was under the influence of intoxicating liquor at the time and at their home, with no one present, she made a lunge at him with a knife and he jumped out of the way when she fell to the floor and on the knife which stuck in her bosom. That he immediately took her in his arms and hurried down the street to get an automobile with which to take her to the hospital, and that a son of the deceased, Ed Watts, accompanied him to the hospital, where she died a short time thereafter. The deceased and the defendant were at the time, and had been for three years, living together, and so far as the evidence discloses were on the best of terms with each other.

The first exception noted relates to the ruling of the court wherein State witness, Ed Watts, 21 year old son of deceased, was permitted (over objection and exception) to testify that he heard his mother make the statement a few minutes

before she died that Tom (defendant) stabbed her with a switch blade knife. It appears that said statement was not offered as a dying declaration, there having been no effort or attempt made to lay a predicate for the admission of dying declarations. It was offered under the rule applicable to inculpatory statements made in the presence of an accused and to which he makes no reply. The well-settled rule in relation to evidence of this character is that the statement must be such which naturally calls for a reply, and the party to be affected by it must be in a situation in which he would probably respond. Stated otherwise, silence in the face of pertinent accusation of crime by the party accused, partakes of the nature of a confession, and is admissible as a circumstance to be considered by the jury as tending to show guilt. However, to be admissible, it must be shown that the accused heard and understood the charge against him under circumstances calling on him for a denial, and that he was silent. The statement aforesaid by the witness, Ed Watts, was the most incriminating testimony against the accused, and we are of the opinion that the preliminary inquiry as to the admissibility of this evidence was insufficient to show the necessary proximity of the accused at the time the alleged statement was made, if made at all. The witness, Watts, testified that he was in the operating room of the hospital with his mother and that the alleged statement was made in his (witness) presence in response to a question by him, and he also stated police officer Wrenn, and others, were in the room with him at the time and that the accused was out in the hall. Police officer Wrenn, who admittedly had struck the defendant twice with a black-jack while under arrest, testified: "I was not in the room with this woman Emma, I was standing out in the hall with Tom. * * * There was a doctor, a nurse or two and Mrs. Gerber, the lady who admits patients, in the room. Ed Watts was back in another room, he and another negro." Conflicts in testimony are for the jury to consider, but the admissibility of evidence is the province of the court, and evidence of an inculpatory nature against the accused is not admissible unless made in the presence and hearing of the accused. The rule above announced was not, in our opinion, sufficiently complied with by the court to authorize the witness, Watts, to testify as above noted.

Appellant next complains of the ruling of the court in not permitting defendant to cross-examine the witness, Ed Watts, relative to his testimony in this same case on preliminary hearing. The witness said, "I believe I testified in Judge Abernathy's court on the preliminary hearing. I know that I testified before Judge Abernathy in the case of Tom Morse, accused of the murder of my mother." But when appellant's counsel undertook on cross-examination to show by the witness that in his testimony on the preliminary hearing he never said a word about his mother stating there, in Tom's (defendant's) presence, or at any time, that Tom had stabbed her, the court sustained the State's objection to this inquiry and would not permit witness to answer. This ruling of the court was error. The following insistence of appellant's counsel in this connection must be sustained, to wit: "Defendant's counsel, on cross-examination, has a legal right to cross-examine a State's witness as to whether or not he testified to a certain thing on the preliminary trial, regardless of whether or not it is shown that he was interrogated relative to same on the preliminary trial." Hixon v. State, 223 Ala. 10, 134 So. 458; Shirley v. State, 144 Ala. 35, 40 So. 269; Pearce v. State, 226 Ala. 436, 147 So. 617; Montgomery v. State, 2 Ala.App. 25, 56 So. 92.

On the trial of this case the defendant objected to the examination of Doris Brown, colored, a witness for the State, on the ground of incapacity. This witness testified: "My name is Doris Brown, I am nine years old, I go to Sunday School. They tell me at Sunday School that little girls go to heaven that tell the truth, and if they tell a lie they go to torment. I know what I was doing awhile ago when I held up my hand, I was saying a prayer." Then the court stated to the witness: "If you don't tell the truth in here, what will I do to you?" Answer: "Nothing." The court stated: "What will the law do to you if you don't tell the truth? What will happen to you if you don't tell the truth today?" The witness answered: "I don't know." The court stated: "Where will you have to go?" She answered: "I don't know where I have to go." On said showing, as to capacity of the witness, the court allowed her to testify, and defendant duly excepted. This was error. The rule is, that persons who have no comprehension of the nature and obligation of an oath,

and are incapable of appreciating their responsibility for its violation, should not be permitted to testify as a witness. This witness clearly did not have the requisite capacity and manifestly did not understand the sanctity of an oath, or know the consequences of false swearing. McKelton v. State, 88 Ala. 181, 7 So. 38.

By numerous witnesses the defendant proved his general good character, and this evidence was without conflict. Several exceptions were reserved to the court's rulings in this connection and also as to other questions, but we see no necessity to deal specifically with each of them. From what has been said, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.