82 So.2d 553

**Andrew BROOKS**

v.

**STATE.**

5 Div. 621.

Supreme Court of Alabama.

Sept. 22, 1955.

John Patterson, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Edmon L. Rinehart, Montgomery, of counsel, for the State.

Russell & Russell, Tuskegee, for appellant.

MAYFIELD, Justice.

The appellant, Andrew Brooks, was indicted and convicted of murder in the second degree and sentenced to the penitentiary for a term of thirty years. From this judgment, he prosecutes this appeal.

There were no eye witnesses to the encounter which led to the death of the deceased. The testimony in this cause was meager and presents very little conflict. The only testimony as to what happened immediately prior to and during the conflict was the evidence which the appellant gave in his own behalf on the witness stand and the evidence of Sheriff Preston Hornsby as to a voluntary statement which the appellant made to him upon his surrender after Gye's death. There is no substantial conflict in these two statements from appellant.

The facts established by the record show that the appellant, the deceased, and two other negroes were engaged in a dice game behind the house of appellant's father in the early hours of the morning. The deceased was rolling the dice and "failed to make his point", but, nevertheless, picked up the wager. The appellant was afraid of the deceased who bore a bad reputation, and retired to his father's house through the kitchen. The deceased followed the appellant to the kitchen, and appellant, without pausing, went out the front door and around the north side of the house. The usual mode of exit from the house was around the south side as there was a garden fence which ran parallel to and very close to the north side of the house. Appellant testified that he thought the deceased would go around the south side of the house but he met him face to face on the north side between the garden fence and his father's house. The deceased drew back his hand as if to stab the appellant, whereupon Brooks struck the deceased in the neck with an ordinary pocket knife. The deceased then came to the front of the house where he collapsed and died. The record of the evidence does not make it entirely clear whether the appellant could have retreated from the actual scene of the encounter without increasing his peril.

The evidence is clear that the deceased died from the wound inflicted by the appellant and the only issue is whether or not appellant killed the deceased in the defense of his own life. The case was tried on this issue and the distinguished trial judge correctly instructed the jury, at great length, on the law of self defense.

There was considerable character evidence, and all of the witnesses established a good reputation for the appellant. The testimony is without dispute that the deceased's general reputation was bad for "peace and quiet." The witness, Melissa Johnson, when asked if she knew the deceased's general reputation for violence, blood-thirstiness, and dangerousness, replied: "I know he is dangerous for whipping up people." This answer, to which no objection was taken, can, we think, only be construed as an affirmative answer to the question propounded.

The evidence shows that in a voluntary statement which the appellant made to the Sheriff that the appellant told him that the deceased "had a name for being bad", and that he was "scared" of him.

The assignments of error relate primarily to refused requested charges and to one portion of the court's oral charge to which counsel for the appellant duly excepted.

The Judge charged the jury as follows:

"You have also heard testimony here about the character of the deceased person for peace and quiet, that it was bad. That is introduced *only for one purpose*, gentlemen of the jury, and that is to shed some light to you, *if it does shed light to you,* and that is for you to consider, on the question of who was the aggressor in this fight which you have heard testified about. *That is all.* You take that for that purpose and give it just such weight as you think it ought to have." [Emphasis supplied.]

We think that the clear import of this portion of the court's oral charge was that the bad character of the deceased could only be considered by the jury on the sole issue of determining who was the aggressor in the combat which led to the deceased's death.

■ Evidence of bad character of the deceased for peace and quietude, coupled

with evidence of a general reputation for violence, blood-thirstiness or dangerousness, is admissible as having probative value on elements of the doctrine of self defense, other than the single issue concerning who was the aggressor.

In Brown v. State, 33 Ala.App. 97, 107, 31 So.2d 670, 679, it was said:

"The basis of the logical admissibility of this type of evidence is that it gives rise to a justification of more prompt and decisive action on the part of the accused when his assailant is known to be of bloodthirsty, violent or turbulent character."

Evidence of this type is also admissible for the purpose of showing a reasonable apprehension of immediately pending danger which would justify the accused in striking more quickly, under the circumstances prevailing at the time of the homicide. 40 C.J.S., Homicide, § 272, p. 1221; Long v. State, 23 Ala.App. 107, 121 So. 453.

■ The learned trial judge charged the jury as to elements of murder in the second degree and voluntary manslaughter. The jury, therefore, had the right to consider the character of the deceased in determining the degree of the defendant's guilt. Sanderson v. State, 28 Ala.App. 216, 181 So. 506.

■ Such evidence was in addition admissible to show the quo animo of the attack. McGuff v. State, 248 Ala. 259, 27 So.2d 241; Rutledge v. State, 88 Ala. 85, 7 So. 335.

■ We, therefore, conclude that the trial judge's limitation of the character evidence in this case to the sole issue of who was the aggressor in the combat resulting in deceased's death was error.

Several written charges requested by the appellant and refused by the court are assigned as error. We pretermit consideration of these charges with the exception of Charge No. 12 which we believe requires comment.

Charge No. 12 is as follows:

"I charge you that if, after looking at all the evidence in this case, your minds are left in such a state of doubt or uncertainty that you cannot say, beyond a reasonable doubt, whether the Defendant acted upon a well-founded and reasonable belief that it was necessary to take the life of the deceased to save himself from great bodily harm or death, or that he stabbed before such impending necessity arose, then this is such a doubt as will entitle this Defendant to an acquittal, and you should so find."

The State contends that this charge was properly refused because it did not hypothesize freedom from fault in bringing on the difficulty. As we have before stated, the evidence was meager. However, there was no material conflict in the evidence and the whole evidence tended to show that the appellant killed the deceased while under a reasonable apprehension of immediate, pending danger to his own life. Further, if the evidence adduced for the State or the appellant is believed, we must reach the conclusion that the appellant was attempting to avoid combat with the deceased.

In Chaney v. State, 178 Ala. 44, 49, 59 So. 604, 606, in commenting on a charge which was identical to Charge No. 12, the court said:

"* * * Nor did the charge have to hypothesize freedom from fault in bringing on the difficulty, as the undisputed evidence showed that the defendant did nothing to provoke the deceased before shooting. * * *"

This opinion cites the case of Gaston v. State, 161 Ala. 37, 49 So. 876; and Harris v. State, 96 Ala. 24, 11 So. 255. These cases show that the question of whether or not Charge No. 12 should have been hypothesized on freedom from fault in bringing on the difficulty depends upon whether there was evidence of this issue sufficient to make it a jury question. In the present state of the record, we find none.

We, therefore, conclude that under the state of the evidence in the instant case, that Charge No. 12 should have been given. The cause is, therefore, reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.