130 So.2d 220

**Tracy PAGE**

v.

**STATE.**

8 Div. 701.

Court of Appeals of Alabama.

Oct. 4, 1960.

Rehearing Denied Nov. 29, 1960.

PRICE, Judge.

The appellant, Tracy Page, was convicted of manslaughter in the first degree under an indictment charging him with first-degree murder. He was sentenced to the penitentiary for three years.

On the night of May 15, 1957, appellant shot Dan Madden in appellant's cafe in the City of Sheffield. Death followed almost immediately.

The evidence tends to show that Madden came into the cafe with some other men, sat down at a counter and ordered beer on credit. After defendant refused to extend credit, he again asked for beer, and was served, and after drinking it he ordered more. Defendant told Madden he would not give him credit, that before ordering more beer he must pay for that already consumed. The argument continued into a rest room and when they came back into the cafe Madden shoved the defendant against some drink cases. Madden returned to the counter, began cursing defendant and picked up a soft drink bottle. In the meantime, Page had told Madden repeatedly to go home and not cause trouble. Billy Warren, a customer in the cafe, persuaded Madden to go outside, and after Madden walked away Warren returned to the cafe. Madden reappeared inside the door of the restaurant and again cursed the defendant, daring him to come outside. Defendant then went into the kitchen, picked up a pistol, and started toward the front of the cafe. As he approached the place where Madden was standing, Madden threw the bottle at the defendant. Some of the defense witnesses testified the bottle hit the defendant and knocked a cap off his head. The pistol fired immediately and Madden fell in the street, several feet from the door of the cafe.

According to the coroner's testimony, one bullet entered Madden's shoulder from the rear and came out through his neck. This bullet caused his death. Another bullet grazed his head.

---

Howell T. Heflin, Tuscumbia, for appellant.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

A statement made by the defendant in writing to the police shortly after the shooting was introduced in evidence. In this statement defendant said:

"When I started toward the front of my place where Madden was he threw the bottle at me and I dodged the bottle and he turned and ran out the door and I shot him and he fell about 15 feet out in the street. I shot at him three times."

There was also testimony by the state that the defendant made oral statements to the coroner and to the police in which he said he dodged the bottle and it didn't hit him; that Madden was in the door when he threw the bottle and as Madden turned to run defendant started shooting.

Defendant testified that immediately following the shooting he thought he had dodged the bottle, but the next day he had a sore place on his head and realized he must have been hit. The defendant and his witnesses testified Madden was facing the defendant when the gun fired. Defendant further stated that he did not state to the officers that he shot Madden as he was running from the cafe.

Mr. James L. Mays testified he has been a licensed mortician since 1932; that he is the coroner of Colbert County and has held such office since 1940; that he has had occasion to examine a great many bullet wounds of various types and has had the opportunity of observing entrance and exit wounds. The witness testified that when a bullet enters the body it makes a clean round hole and when it comes out of the body it makes a ragged, jagged hole; that the hole in defendant's back was a smooth round hole and the hole under the chin was twice as large and was ragged; that it was his opinion both holes were made by the same bullet and that the one in the back was the entrance hole and the hole under the chin was the exit wound.

This testimony was objected to on the grounds that the witness was not sufficient-ly qualified to testify as an expert and that it had not been shown that the witness had ever observed a person as he was actually being shot so as to determine which were the entrance and which were exit wounds.

In Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, 565, it is said:

"The criterion for admission of expert testimony is that the witness, by study, practice, experience or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses. 6 Ala.Dig., Criminal Law, ☞478 * *.

"And whether a witness is shown to possess the requisite qualifications of an expert is a preliminary question largely within the discretion of the court."

Defense counsel argues in brief in Rikard v. State, 15 Ala.App. 497, 73 So. 992, and Rohn v. State, 186 Ala. 5, 65 So. 42, the expert witnesses allowed to express opinions as to entrance and exit wounds were physicians, while here the witness was an undertaker and the county coroner, and as such was not qualified as an expert witness.

It is true that the mere fact that a person is an undertaker or coroner does not qualify him to give the testimony of instant concern, but by his preliminary examination the witness here was shown to possess the necessary qualifications to testify as an expert. Hicks v. State, 247 Ala. 439, 25 So.2d 139; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Odom v. State, 253 Ala. 571, 46 So.2d 1. We find no abuse of the court's discretion in admitting the witness's evidence. To further illustrate our view that defendant's contention that only a medical expert is qualified to testify, we call attention that in the Rohn case, supra, the court said [186 Ala. 5, 65 So. 43]:

" * * * it was clearly competent for the state to prove that bullet wounds are characteristically different

at the points of entry and exit, respectively, and what that difference is; and anyone who has often observed and examined such wounds is a competent witness thereto."

In Wilson v. State, supra, a member of the State·Toxicological Department was shown "to be sufficiently qualified to give his opinion as to the entrance and exit wounds on the body of the victim." In Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692, it was held that a police officer was qualified to testify concerning entrance and exit wounds.

■ We find no merit in appellant's contention that the trial court erred in sustaining the state's objection to this question propounded on cross-examination to the witness Mays:

"Q. I will ask you this, Mr. Mays, will the fact that a gun has pits in its barrel and it fires a bullet will that bullet when it enters the human body leave a more ragged hole than a bullet that is fired from a pistol which does not have pits in its barrel?"

It was not shown that the witness was qualified to testify as an expert on the subject of firearms or ammunition. The fact that he was shown to be familiar with entrance and exit wounds on the body would not suffice to qualify him as an expert on ballistics. Furthermore, there was no evidence tending to show that a pistol with pits in its barrel was used in the shooting of deceased.

■ The witness Mays was asked this question on cross-examination:

"Q. Isn't it entirely possible that the deceased Dan Madden could have been shot from the front and the bullet would have glazed his head and turned him around, is that possible?"

The trial court properly sustained the state's objection to this question. It called for the mere conclusion of the witness, and was invasive of the jury's province.

The state's witness Bates, a Sheffield policeman, testified deceased was lying "eleven good long steps" from the door of the cafe. Photographs were introduced in evidence and the witness placed an "x" mark on one picture to indicate the location of the body. On cross-examination he testified he measured the distance by stepping it on the night of the killing, and two or three times afterwards. He further stated that as a witness in a hearing in court on June 17, 1957, he testified the body was lying about 30 feet from the cafe door. He was then asked if this question was propounded to him at the hearing,

"Q. You never did measure it yourself?", and if he replied: "A. No, I didn't measure it."

The witness answered:

"I didn't measure it with no tape, I stepped it off, which is not accurate either way."

Defense counsel thereupon asked the witness:

"Q. Well, now, Mr. Bates, did you at any time in that proceedings ever say anything at all about stepping it off?"

The state's objection to this question on the ground that it was "illegal, irrelevant and not the proper way of impeaching," was sustained. In Brown v. State, 79 Ala. 61, it is said:

"A witness may be impeached, not only by proving that, at other times, he has made statements contradictory of, or inconsistent with those he makes on the trial, but also by proving that, on a former occasion, and under circumstances when it was his duty to state the whole truth, he omitted in his statement facts to which he testifies on the trial."

In Morse v. State, 27 Ala.App. 447, 173 So. 875, 877, the following appears:

"Defendant's counsel, on cross-examination, has a legal right to cross-ex-

amine a state's witness as to whether or not he testified to a certain thing on the preliminary trial, regardless of whether or not it is shown that he was interrogated relative to same on the preliminary trial. Hixon v. State, 223 Ala. 10, 134 So. 458; Shirley v. State, 144 Ala. 35, 40 So. 269; Pearce v. State, 226 Ala. 436, 147 So. 617; Montgomery v. State, 2 Ala.App. 25, 56 So. 92."

▪ We are of the opinion that whether the witness failed to testify on the former hearing that he had stepped the distance was immaterial, and that the evidence sought to be elicited by the question was not so contradictory of his testimony on the present trial as to be impeaching. If the court's ruling was erroneous it was without injury to defendant. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

At the conclusion of the redirect examination of the defendant's witness, Johnny Carter, the solicitor requested the court's permission to consult with the witness out of the presence of the jury. The jury was excused and the witness was taken into a witness room. The defendant's attorney objected to the solicitor's having a private conversation with the witness. The court overruled the objection and stated the docket sheet showed that Johnny Carter was summoned for the state as well as for the defendant. After the witness was returned to the stand he testified he had been convicted of assault with intent to murder in Lawrence County in 1947, and was placed on probation for such offense.

▪ It is within the trial court's sound discretion, which will not be interfered with in the absence of an abuse thereof, to interrupt the proceedings to permit counsel to interview a witness. Gallman v. State, 29 Ala.App. 264, 195 So. 768. We find no abuse of the court's discretion in this instance.

This incident is made a ground of appellant's motion for a new trial. Affidavits of the witness Carter, the defendant, and defendant's attorney in support of the motion were introduced on the hearing. Carter's affidavit states he was asked in the witness room whether he had ever been in trouble and he informed the solicitor that charges were brought against him for making threats against certain persons concerning his dog, but that he had made no such threats, and that on the trial about the matter in Lawrence County he was placed on six months probation under a peace bond proceeding; that he is uneducated and is unfamiliar with legal terms, and when he was brought back into the courtroom and was asked by the solicitor whether he was convicted of assault with intent to murder in Lawrence County in 1947, and placed on probation, he answered, "Yes, sir," but he was answering only that he had been placed on probation, and did not understand that a charge of assault with intent to murder was different from a peace bond proceeding. The defendant deposed that he did not learn until after the jury returned its verdict that Carter had not in fact been convicted of assault with intent to murder. Defendant's counsel averred that he did not know at the time the question was asked Carter whether he had been convicted of assault with intent to murder, and did not learn until after the verdict that he had not been convicted of such offense. He further deposed that the circuit solicitor argued to the jury that Carter's testimony was unworthy of belief because of such prior conviction.

Appellant's counsel argues in brief that the court erred in overruling the motion for a new trial because of the improper methods used by the solicitor in attempting to impeach the witness Carter. It is insisted, "the evidence is uncontradicted as to what occurred in the room in which the solicitors took the witness Johnny Carter during the course of the trial. They definitely knew that he was not convicted with assault with intent to murder and such question trying to impeach him was a foul blow."

 A motion for a new· trial rests in the sound discretion of the trial court, and its action will not be disturbed on appeal except where abuse of discretion is clearly shown. See 7 Ala.Dig., Criminal Law, ☞911. We are of opinion the court did not abuse its discretion in refusing to grant the motion for a new trial. Carter's affidavit shows that if defense counsel had questioned the witness on redirect examination, or had consulted with him privately after he had testified as to his previous conviction in Lawrence County, the matters which he claims he stated to the solicitor in the witness room regarding the former conviction could have been brought out on the trial. We find no prejudicial conduct on the part of the solicitor in the record. His private interview with the witness was had with the permission of the court. The trial court considers the affidavits "in the light of his own knowledge of the incidents." Arant v. State, 232 Ala. 275, 167 So. 540, 544, and was not required to accept as true the statements in Carter's affidavit even if they were uncontradicted. Moreover, the trial court did not have before it on the motion the best evidence as to the true nature of the proceeding against the witness in Lawrence County. After recantation by this witness such fact could only be established by the court record of the conviction, or a certified copy thereof. Smothers v. State, 39 Ala.App. 292, 98 So. 2d 66.

· The state objected to a question propounded to defendant's witness Napoleon Eggleston as to whether the deceased, Dan Madden, had come to Eggleston's home early in the evening of the night he was killed. Thereupon defendant's counsel offered to prove by the witness that he had loaned the deceased $3 just before deceased went to the appellant's cafe. The trial court did not permit the introduction of this testimony.

 There was evidence that deceased refused to pay for beer he drank and told defendant he had no money to pay for it. There was also testimony that persons who came to the cafe with deceased told defendant to make deceased pay for the beer; that he had just borrowed money and they knew he still had it. It is our opinion that it was immaterial whether or not the deceased was telling the truth when he said he couldn't pay for the beer. Objection to the offered evidence was properly sustained.

Refused charges 2, 3, 4, 5 and 30 which would justify an acquittal of defendant if the firing of the gun was accidental, were properly refused. Campbell v. State, 13 Ala.App. 70, 69 So. 322; Wilson v. State, 32 Ala.App. 591, 28 So.2d 646; Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564.

Charge 9 was properly refused. Odom v. State, 253 Ala. 571, 46 So.2d 1.

Charge 41 is confusing and misleading and was refused without error.

Charge 42 was properly refused. Walker v. State, 33 Ala.App. 614, 36 So.2d 117; Parson v. State, 39 Ala.App. 142, 95 So.2d 206.

Requested charge 49 was reviewed in Bowman v. State, 35 Ala.App. 420, 47 So. 2d 657, 662. There the charge was number 7. The court said, in part: "It appears the authorities support the view that if the question of retreat is not involved the charge should be given, otherwise it should be refused. We adhered to this theory in the case of Doswell v. State, 34 Ala.App. 546, 42 So.2d 480. See also, Bell v. State, 20 Ala.App. 425, 104 So. 443; Huff v. State, 23 Ala.App. 426, 126 So. 417."

 The question of retreat was not involved in the case at bar, therefore, the defendant was entitled to have said charge given. Charge 49, however, appears in the record under the heading "Refused Charges," but it is endorsed, "Given, Deloney, Judge." We issued certiorari to ascertain from the clerk of the circuit court whether said charge was given or refused. In compliance with the writ, the clerk has certified to this court a true and correct copy of the original charge showing· the endorsement, "Given, Deloney, Judge." We

must conclude that said charge 49 was given by the trial court. Accompanying the return to the certiorari is a letter from the clerk, which reads:

"When this transcript was prepared we noticed that this charge was marked "given" but was in the envelope with the "refused" charges. We called this to the Judge's attention, but he said it would have to go in the transcript just as it was."

Refused charge 47 is fairly and substantially covered by said given charge 49.

Charge 51 was properly refused. Robinson v. State, 155 Ala. 67, 45 So. 916.

While charge 52 would have been a good charge under the evidence if aptly drawn, Harris v. State, 96 Ala. 24, 11 So. 255; Chaney v. State, 178 Ala. 44, 59 So. 604; Brooks v. State, 263 Ala. 386, 82 So. 2d 553, it possessed misleading tendencies because of the use of the work "Struck," and the trial court will not be put in error for refusing it. There was no evidence that defendant "struck" deceased, unless we hold "shooting" to include striking. Dawson v. State, 148 Ala. 672, 41 So. 803 (Opinion in So. Reporter only), squarely holds that this is not required in such cases.

Charge 58 is a mere statement of a legal principle, without instruction as to its effect upon or application to the issues in the case, and was properly refused. Holloway v. State, 37 Ala.App. 96, 64 So.2d 115.

We have treated specially the refused charges insisted upon in brief. We have carefully considered the remainder of the refused charges and find that they assert incorrect principles of law, or were fairly and substantially covered by the court's oral charge and charges given at defendant's request.

The evidence presented questions for the determination of the jury, and was sufficient, if believed to the required degree to justify the verdict. There was no error in the refusal of the general affirmative charge, requested in writing, nor in the denial of the motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.

We find no reversible error in the record. The judgment of the trial court is affirmed.

Affirmed.