108 So.2d 180

### Tom L. SLAGLE

v.

### STATE.

5 Div. 540.

Court of Appeals of Alabama.

Jan. 6, 1959.

---

R. C. Wallace, Lafayette, and Glenn & Glenn, Opelika, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

The indictment against this appellant contained two counts.

Count 1 charged that appellant, "a man, with the intent of arousing, appealing to, or gratifying the lust or passion of sexual desires, of himself, did unlawfully take immoral, improper or indecent liberties with Gail Douglas, a girl child under the age of sixteen years."

Count 2 is similar to count 1, except that it charges that appellant did unlawfully place his hand upon the sexual organs of Gail Douglas, etc.

The indictment charges an offense under Section 326(2), Title 14, Code of Alabama 1940 (Pocket Part), which reads as follows:

"Definition; punishment.—Any person who shall take or attempt to take any immoral, improper, or indecent liberties with any child of either sex under the age of sixteen years, with intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child, or who shall commit, or attempt to commit any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, with an intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child, shall upon conviction, be imprisoned in the penitentiary for not less than one nor more than five years."

The evidence presented by the State tends to show that on 28 August 1957 Mrs. J. W. Slagle, a great grandmother of the alleged injured girl, Gail Douglas, took her to call on another grandmother, Mrs. Tom Slagle, mother of the appellant. The appellant and his wife lived with Mrs. Tom L. Slagle.

Two other children, relatives also went along.

The women sat on the porch, and the children played.

After awhile the appellant came to the porch. There he played with the children awhile, and then took them off to watch him feed the chickens.

The chicken yard was some fifty feet from the porch, and in sight thereof.

According to the young girl Gail Douglas, who was six years of age, the appellant had the other two children remain outside, and he took her into the chicken house. There he had her lie on the ground, and took her panties down, and he "stuck his finger down there."

Mrs. J. W. Slagle further testified that three days later Gail had made a complaint to her that the appellant "carried me in the chicken yard and pulled my pants down and hurt me with his fingers."

She immediately examined Gail and found her genitals red, angry, and inflamed.

Mrs. Laudie Douglas, mother of Gail, testified that on 1 September 1956, her daughter complained to her as follows:

"She said, 'Tom L. has done something to me.' I asked her what and she said that he carried them all to the chicken yard and that he wouldn't let Wanda and Dale in the chicken yard, that he let her in and carried her on the inside, pulled her pants down and put his finger up her, and she started crying then. Right then I carried her to her bedroom and examined her. I understand it had been several days since it happened. She had been touched, you could tell."

Mrs. Douglas found Gail's private parts "real red."

She told her husband, Laudie Douglas, of the matter, and he, on that night, took Gail to Dr. J. E. Boyette, in Lafayette:

The first witness called for the defense was Dr. Boyette.

Dr. Boyette testified that on 1 September 1956, he examined Gail Douglas, and particularly examined her sexual organs.

He was then asked by defense counsel to state what he found upon this examination.

To this question the State interposed an objection.

Thereafter followed a considerable colloquy between the court, defense counsel, and the Solicitor during which the court ultimately sustained the objection to the question.

During the colloquy the court expressed the opinion that under the terms of the statute under which the prosecution was had, it made no difference whether the child's genital organs were touched or injured.

The colloquy then continued as follows:

"Mr. Wallace: But, now, when the State puts witnesses on this stand and describes her condition, we certainly have a right to refute it, and that's what we are offering to do.

"The Court: The court doesn't think so, because her condition would be immaterial, her physical condition, Mr. Wallace.

"Mr. Wallace: Yes, sir. Do I understand the court to rule that even though they have said that she was red there, that I can't refute that condition?

"The Court: That's what the court is about to say, because the court is now about to tell the jury—and the court will do that now: Gentlemen of the jury, you will disregard any testimony in this case relative to the physical condition of this little girl, whether her private organs were red or inflamed or sore or penetrated or not, and that you will disregard that, as that has nothing in the world to do with this case. I am trying to hold it to the real issue.

"Mr. Wallace: Do I understand from what the court has said that the court has ruled out all testimony about her condition, and the examination made by the mother or by the grandmother?

"The Court: Yes, sir, and the court will further state not only is it ruled out, but it has nothing to do with it, as the question is, whether this defendant laid his hand on her, and so forth. You understand that statute, Mr. Wallace."

It should be noted here also that in his oral instructions to the jury the court

again instructed the jury that "there is no place in this case for any testimony relative to any physical condition of this little child because there is nothing mentioned in the indictment or in the statute about the physical condition or any bruises or lacerations or injuries of any kind."

An exception was duly reserved to this portion of the court's instructions.

The appellant's evidence tended to contradict the evidence presented by the State in several phases. The appellant testifying in his own behalf denied that he had in anywise mistreated Gail Douglas at any time. We refrain from stating the defense evidence in detail, since it is our conclusion that this judgment must be reversed because of erroneous rulings hereinbelow discussed.

■ It is our conclusion that the court erred in sustaining the State's objection to the question propounded to Dr. Boyette seeking evidence as to his findings upon his examination of Gail Douglas.

■ While we agree with the trial judge that Section 326(2), supra, may be violated without actual physical contact with the child under sixteen years of age, such accord does not mean that the physical condition of the child after an alleged violation of said section may not be highly competent evidence. To be competent, evidence must be relevant, that is, it must tend to prove, or disprove, the issues being litigated. Magee v. Billingsley, 3 Ala. 679; Southern R. Co. v. Montgomery, 229 Ala. 456, 157 So. 854.

The offense denounced by Section 326(2), is, in its broader aspects, a member of the sexual crimes groups. In prosecutions for the ordinary sexual offenses, such as rape, assault with intent to rape, carnal knowledge, etc., the physical condition of the alleged injured party a reasonable time after the alleged offense has always been considered material in shedding light on the issues, and corroborative in nature. Myers v. State, 84 Ala. 11, 4 So. 291. All-

ford v. State, 31 Ala.App. 62, 12 So.2d 404; Hull v. State, 232 Ala. 281, 167 So. 553; Williams v. State, 224 Ala. 6, 138 So. 291.

In the Allford case, supra, an examination by a physician made five days after the offense was held admissible, and in the Myers case, supra, the results of a physician's examination made ten days afterward was held to have been admissible. In the present case the examination by Dr. Boyette was made on the night of the day on which Mrs. Laudie Douglas, the mother, examined the child and found her genitals "real red," and within a day or so after Mrs. J. W. Slagle had examined the child and found her private parts red, angry, and inflamed.

■ The evidence presented by the State as to the condition of the child's genitals was competent, material and relevant.

The State having properly introduced such evidence, clearly it was the right to introduce the testimony of Dr. Boyette in rebuttal thereto.

■ Even had the State not first introduced the evidence as to the condition of the child's genitals, the evidence sought to be introduced by the defense through Dr. Boyette would have been competent evidence in view of the child's testimony that appellant had hurt her with his finger, and in further view of the testimony as to her complaints.

The court, in this aspect, therefore erred in sustaining the State's objection to the question propounded to Dr. Boyette.

The evidence as to the child's physical condition being competent, the court erred in ex mero motu attempting to exclude such evidence, and thus destroy the rebuttal character of the evidence sought to be shown by the defense.

■ Even when illegal testimony is withdrawn, it is always a serious question as to how far such testimony, though

withdrawn in the most explicit and emphatic manner, has seriously affected the party against whom it was admitted. Davis v. State, 18 Ala.App. 482, 93 So. 269, 270. Indeed, our Supreme Court has said it regards the practice "with cautious disapproval." See Maryland Casualty Company v. McCallum, 200 Ala. 154, 75 So. 902.

In view of the extensive evidence shown by the State as to the condition of the girl's genitals, even had such evidence been illegal, which it was not, we doubt that the court's efforts to withdraw such evidence from the consideration of the jury could have been efficacious. This aside however, we are here dealing with the withdrawal of competent evidence, not illegal evidence.

The lower court therefore erred in its rulings in the premises.

The evidence introduced below is all to the effect that bad feelings had existed for some time between the various branches of the families involved in the case below.

In this connection, Mrs. Laudie Douglas, a witness for the State, testified on cross examination that she did not "particularly like" the appellant. This must, in light of all her testimony, be construed as a statement that she disliked the appellant.

On redirect examination this witness was permitted, over appellant's objection, to detail the reason why she did not like the appellant, which was to the effect that in 1950 the appellant had "made a pass" at her, and when she walked away he had kicked a child's stroller across a porch.

■ In the ruling admitting such evidence the court erred.

■ Where bias is admitted, it is not permissible to go further and show the cause of such bias and the details of the causes for such feelings. This for the reason that multiplication of issues is always undesirable. Tuggle v. State, 19 Ala. App. 541, 98 So. 815; King v. State, 23 Ala.App. 572, 129 So. 316. As stated by De Graffeinried, J., in Allen v. Fincher, 187 Ala. 599, 65 So. 946, 948, if bias is admitted, "then there should, at once, be an end of the matter."

Reversed and remanded.