120 So.2d 904

Curtis C. ESPEY

v.

STATE of Alabama.

6 Div. 443.

Supreme Court of Alabama.

April 21, 1960.

Rehearing Denied June 2, 1960.

deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

**672**

MERRILL, Justice.

Appellant, Curtis C. Espey, was convicted of murder in the second degree and sentenced to the penitentiary for twenty-five years. His pleas were not guilty and not guilty by reason of insanity. The latter plea was withdrawn at the close of the evidence. His motion for a new trial was overruled.

Appellant was forty-seven years of age and an uncle of the deceased, Wiley Howard Espey, who was thirty-three years of age. They were on friendly terms and had been riding together in appellant's automobile in the afternoon and night of March 26, 1959.

The wife of the deceased and his sister had been looking for him for some time because he had failed to come home from work as was his usual custom. Around 9:15 P.M., they drove up in front of a white block building, on the Berry-Gorgas Road, which was known as Curt Espey's place, and was operated by appellant. They stopped their automobile and saw appellant and the deceased standing in front of the front entrance to the building and the deceased's wife called to him.

About that time, the appellant raised both hands and struck the deceased near the shoulders. They saw "something shiny" in his right hand. The deceased fell backward to the ground. They saw no weapon in the hands of the deceased and they did not see him strike the appellant. The women started their car and drove back to Berry to get police help, but they were unable to get the policemen at Berry because Berry is in Fayette County and Curt Espey's place was in Tuscaloosa County. They summoned the sheriff of Tuscaloosa County by telephone and returned to Curt Espey's place. They found the body of the deceased lying in the middle of the road, some three hundred steps from the front of Curt Espey's place, and a trail of blood led from there to the place where they had seen him fall. The deceased had been cut at the neck, on the chest, on the arm and hands and in the small of the back. Death was the result of shock and hemorrhage because of the severing and cutting of the external jugular vein.

While the two women and others who had stopped were standing near the spot in the highway where the body was lying, appellant's automobile came by, slowed up and went on toward Tuscaloosa to the hospital. At the hospital, appellant was treated for two superficial cuts on his hands and a small stab wound in the abdomen. He was treated at the Druid City Hospital, charged $5.25 and dismissed. He was arrested at his home around 1:30 A.M. the next morning.

Appellant did not take the stand but he showed that he and deceased had been on good terms all of their lives. One of appellant's witnesses testified that they both appeared to be drinking a short time before the altercation and that the deceased was intoxicated but appellant was not drunk. The two women who testified for the State were the only eye witnesses, and there was no evidence as to the cause of the killing, or the circumstances which led up to it, except that both appellant and his nephew had been drinking.

Appellant argues that the court erred in allowing State's witness, Blanche Swindle, sister of the deceased, and niece of appellant, to testify that she and other people, while standing by the side of the road on which the body of the deceased was lying, some hour after the difficulty, saw an automobile, which she identified as belonging to appellant, approach the point on the highway where deceased was lying, going at a rapid pace; that it slowed down, its lights flashed on the body of deceased; that appellant was seated in the front seat but another person was driving; and that the automobile did not stop.

Appellant contends that this testimony was inadmissible because events, statements and acts which occur after the fatal difficulty are not admissible as a part of the res gestae, unless they were in continuance of the difficulty.

The correct rule is stated and approved in Smarr v. State, 260 Ala. 30, 68 So.2d 6, 10:

"The acts, declarations, and demeanor of an accused, before or after the offense, whether part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him."

After citing this principle, we held in Willingham v. State, 261 Ala. 454, 74 So. 2d 241, 244, that it was not error to permit the State to prove that the defendant returned to the dance hall an hour after the difficulty and was dancing, because "such proof was of probative value as bearing on the defendant's attitude toward the offense just committed by him." We think the same reasoning is applicable to the rulings of the trial court in the instant case.

It is also urged that the court erred in permitting the witness to testify, over objection, that the car did not stop. But a few moments before, the witness had testified without objection:

"Q. Did the car stop? A. No."

The admission of testimony, if error, is harmless where the same witness has previously testified to the same facts without objection. Woodard v. State, 253 Ala. 259, 44 So.2d 241.

Appellant further contends that the court erred in refusing to grant a mistrial when the following occurred:

"The Court: Whenever any statement is excluded by the Court you are not to consider it. Whenever an objection is made and the Court sustains the objection you will not consider it.

"Mr. Edward deGraffenried: Your Honor, if they ask that question about whether or not Curt slowed up, she hasn't said Curt was driving.

"Mr. McDuffie: Your Honor, we expect to show by this witness that Curt (the appellant) came by with his wife and son and that there at that time the deceased was lying out in plain view and in his lights, and we expect the evidence to show they didn't stop or ask if they could take him to the hospital or anything, and Curt knew at that time he was lying there and didn't know whether he was dead or dying.

"Mr. Edward deGraffenried: We object to that and move to exclude it from the jury. It is highly prejudicial and if there are anymore speeches to be made we ask that the jury be excluded.

"The Court: Sustain the objection.

"Mr. McDuffie: Except.

"Mr. Edward deGraffenried: We move for a mistrial on the strength of that statement. It is highly prejudicial and cannot be erased or removed from the minds of the jurors.

"The Court: Overruled.

"Mr. Edward deGraffenried: Except."

The general rule is that improper argument of counsel is not a ground for a new trial or subject to review on appeal unless there is due objection by counsel or motion to exclude, a ruling thereon by the court and an exception thereto, or a refusal of the court to make a ruling. Nichols v. State, 267 Ala. 217, 100 So.2d 750; Washington v. State, 259 Ala. 104, 65 So.2d 704.

■ We do not think the remark here comes within the exception to the general rule where the remark or argument is so grossly improper or highly prejudicial that neither retraction nor rebuke by the trial court would have destroyed its sinister influence. Anderson v. State, 209 Ala. 36, 95 So. 171. This last question is the only one requiring a decision, since the court ruled with appellant, and the rulings being favorable to him, there is nothing further for us to review. Dockery v. State, 269 Ala. 564, 114 So.2d 394.

■ Appellant argues that the court erred in overruling appellant's motion to exclude the following statement of the solicitor made in argument to the jury:

"He came back by, the body of his nephew lying there with his throat cut and did not stop and show him the courtesy or respect that you or I would show to a dog lying in the highway there."

No ground was stated for the motion to exclude and the rule is that a motion to exclude without stating the grounds therefor is properly overruled. Allen v. State, 18 Ala.App. 346, 92 So. 18; Bell v. State, 19 Ala.App. 169, 95 So. 784.

However, this rule cannot be applied here because of the stipulation entered into early in the trial, which reads:

"It is agreed by and between the State and Defendant in this case that when an objection is made no grounds therefor need be assigned unless called for by opposing counsel or the Court, and that when a motion to exclude is made no grounds need be assigned

therefor unless called for by opposing counsel or the Court, except if only a portion of the answer is sought to be excluded the particular portion thereof shall be pointed out to the Court."

But the rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury. Bryson v. State, 264 Ala. 111, 84 So.2d 785; Garrett v. State, 268 Ala. 299, 105 So.2d 541. The evidence supported the statement that appellant came back and passed the spot where his nephew lay with his throat cut, and we are unwilling to pronounce prejudicial error in the stated ruling. See Watson v. State, 266 Ala. 41, 93 So.2d 750, 752, for other examples of "inelegant and unparliamentary" statements in argument that have been held not to be grounds for reversal.

Appellant contends that the court erred in permitting the solicitor to propound several questions of the same nature to appellant's witness Duncan after adverse rulings by the trial court. Duncan was the driver of the automobile in which appellant, his wife and one Curtis were riding when they passed the spot where deceased was lying in the road. The witness had stated, without objection, what was said in the car as they passed the spot. We have considered these questions in consultation and we conclude that they were not of such a persistent and prejudicial type as would require a reversal, Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110, where we distinguished questions similar to the ones in the instant case from those in Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389. To justify a reversal, we must conclude that substantial prejudice has resulted. Upon due consideration we are not so persuaded, and conclude that error to reverse cannot properly be rested upon these rulings. Birmingham Electric Co. v. Mann, 226 Ala. 379, 147 So. 165; Vaughn v. State, 236 Ala. 442, 183 So. 428.

It is next argued that the court erred in sustaining objections to questions propound-

ed to defendant's witness, Dr. Lord, on direct examination. The questions were:

"Would you state what history he gave you at that time?"

"I will ask you, if the defendant on that occasion stated to you where he received these injuries, that is, the place?"

"Did he ever state to you he received these injuries on the streets of Berry?"

Appellant also argues that the court erred in instructing Dr. Lord as to the manner in which he should answer the questions. These instructions were:

"You may show what he told you as to his injury. Not how it occurred but what it was."

"Doctor, that doesn't contemplate you shall answer how or in what manner he received his injuries. Just describe his condition."

"But I state to you he can describe his condition and as to how he was suffering. All those matters that enter into his diagnosis may be gone into."

"All I am ruling is this: That whatever the defendant said about the details of how he got hurt, whether it was his fault or somebody else's fault is not admissible."

"I exclude that statement and sustain the objection in that form and I state to you anything that had to do with the examination, treatment and care of the patient is admissible; but anything where he said he had to take the knife away from him I exclude."

It is apparent that the trial court was trying to instruct the witness that he could tell how the patient was hurt but could not quote the patient's self-serving statements as to how he behaved or what he said in the altercation. As stated in Lowery v. Jones, 219 Ala. 201, 121 So. 704, 706, 64 A.L.R. 553:

"* * * In giving his professional opinion as to the extent and nature of the injury, he (a physician as an expert witness) may state the basis upon which he has formed the opinion, his personal examination, including the symptoms given by his patient, their beginning, sequence, and continuity, the fact of a hurt or injury, and its character. These involve statements to the physician in the nature of past events and supposed causes. They must not go into the question of responsibility for the injury. They are limited to purposes of diagnosis, and come in evidence along with and as part bases for his opinion, admitted out of necessity in allowing a proper field for medical science in legal administration; * * *."

The trial court properly excluded such statements by the witness as "stating that he tried to stop him," and "he tried to take his knife away from him."

No reversible error appears in these rulings by the trial court.

It is next urged that ineradicable injury was done to appellant in the following cross-examination of Dr. Lord:

"Q. Doctor, you mentioned you knew Curt Espey just had one leg. Do you know how he lost that other leg?

"Mr. Ryan deGraffenried: We object.

"The Court: Sustained.

"Q. Do you know whether or not he lost that fighting?

"Mr. Edward deGraffenried: We object.

"The Court: Sustained.

"A. No, I don't.

"Mr. Edward deGraffenried: We move for a mistrial. That is highly prejudicial.

"Mr. McDuffie: They went into the leg proposition. We didn't have anything to do with it.

"The Court: Overrule the motion.

"Mr. Edward deGraffenried: We would like to state the grounds of our going into that. A one-legged man can't defend himself as well as a man with two legs.

"The Court: Sustain the objection.

"Mr. Edward deGraffenried: But how he lost it doesn't have anything to do with it.

"Mr. Jeff deGraffenried: We except to the Court's overruling our motion for a mistrial.

"The Court: Overrule the motion for a mistrial.

"Mr. Edward deGraffenried: We except."

Appellant had brought out on direct examination that he had only one leg, that the other had been amputated at the knee and he was wearing an artificial leg when the witness had attended him at the hospital following the altercation with the deceased. All of the rulings were favorable to appellant except that the motion for a mistrial was overruled.

A mistrial will not be ordered on the motion of the defendant on account of illegal questions asked by the solicitor, where the court sustained the defendant's objection, unless it clearly appears that the rights of the defendant have been so prejudiced as to render a fair trial a matter of grave doubt. Stephens v. State, 252 Ala. 183, 40 So.2d 90. We cannot say that the asking of these questions so prejudiced the defendant that grave doubt exists as to whether or not he received a fair trial.

Lastly, it is argued that the court erred in overruling appellant's motion for a new trial.

The granting or refusing of a motion for a new trial is a matter resting largely in the discretion of the trial court, and its order will not be disturbed on appeal unless some legal right of the appellant has been abused. No reversible error is shown in the action of the trial court in denying the motion for a new trial.

Affirmed.

LAWSON, STAKELY and COLEMAN, JJ., concur.