120 So.2d 924

**Grady BLOCKER**

**v.**

**STATE.**

**4 Div. 401.**

Court of Appeals of Alabama.

May 24, 1960.

G. A. Lindsey, Elba, for appellant.

MacDonald Gallion, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

Blocker was indicted and convicted of taking immoral, improper or indecent liberties with a child under sixteen years of age by feeling or fondling of her female organs with the intent of arousing lust in either himself or her or in both of them. Act No. 397, September 9, 1955; Slagle v. State, 39 Ala.App. 691, 108 So.2d 180.

The trial judge sentenced him to thirty months imprisonment.

On or about July 21, 1958, the complainant, a girl then eleven years old, was roller skating on the pavement of a porch of a warehouse in Elba. She was there with a four-year old boy who was riding a bicycle.

She noticed Blocker drive by in an old car. The next time she saw him the car was parked alongside the building in a graveled parking lot. He asked her if she could teach him to skate. She replied, "No, sir, you don't have any skates."

Blocker persuaded her to try skating on the gravel and then on the grass. He got out of the car, walked to her and put his arms "around" her. He told her to go around to the rear of the warehouse with him. At the corner of the building she turned around and came back along the side of the building.

The complainant was wearing "short shorts." As she got about midway to the front of the parking lot at a point about four feet from the warehouse, Blocker approached her putting his arms around her neck and "kind of around" her back and shoulders. He then put his hands between her legs, touched her private parts and told her to go to the back of the building with him. The girl, who was in tears by then, broke away from him and ran (or skated) home. She complained to her parents.

She next saw Blocker a week later near the Courthouse Square and then again in front of a drugstore. She went to a store where her mother was shopping and told her of finding Blocker.

The day after the assault the sheriff found tire tracks where the complainant said Blocker had parked. A description of Blocker's car given by a deputy sheriff agreed with that to which the girl had testified.

The defendant moved to exclude all the State's evidence. The trial judge denied this motion.

For the defense Blocker produced his uncle, Ralph Daughtry, who testified he was at the defendant's home until three or half past of the afternoon in question. The two left then and drove to the home of another uncle, J. V. Daughtry, in Opp. They stayed there until after six o'clock.

With the brother, they went first to the Bungalow Club, then to The Rebel Club and back to The Bungalow. From there the trio went again to J. V.'s house whence Blocker and Ralph left about a quarter to eight or eight o'clock at night. These visits, if believed, put Blocker completely away from the scene of his alleged molesting the girl.

Blocker's mother, his sister-in-law, his uncle, J. V., and J. V.'s wife all corroborated Ralph Daughtry's testimony. A number of witnesses to Blocker's good general reputation were called. Two State witnesses were called for further cross-examination and the defense rested.

The State then recalled the complainant and her father in rebuttal. The girl related further details of her identifying the defendant on the Square and of telling her mother of seeing him. The father fixed the time of her coming home crying.

■ It is obvious from the evidence in this case that the girl neither consented nor cooperated, and hence she is not an accomplice under Code 1940, T. 15, § 307. We consider Fuller v. State, 39 Ala.App. 90, 94 So.2d 788, states the rule as to corroboration which should govern here.

■ Here, too, the defense presented no evidence to displace the presumption that an infant between the ages of seven and fourteen is incapable of committing a felony. Key v. State, 4 Ala.App. 76, 58 So. 946.

■ To demonstrate that this statute, at least as here applied, is invalid, Blocker claims two supposed fatal defects: (1) invalidity by reason of ambiguity of definition; and (2) invalidity because of making an otherwise inherently innocent act illegal solely because of the mental attitude of the actor. For both propositions, we are cited to Bolin v. State, 266 Ala. 256, 96 So.2d 582, and Kahalley v. State, 254 Ala. 482, 48 So.2d 794. The Bolin case involved part of a statute which made it unlawful to possess stink bomb ingredients for the purpose of making stink bombs. These ingredients are not only useful for making stink bombs but also for many industrial, agricultural and other beneficent purposes. No ascertainable standard for determining an innocent purpose for such uses as against making a stink bomb was laid down in the act.

Here, however, the liberties which are prohibited are not the beneficent liberties of life, property and pursuit of happiness but are expressly delimited by the statute to "immoral, improper, or indecent liberties," with the further restriction that they be taken with the intent of "arousing * * * or gratifying the lust."

We cannot consider that the words, "immoral, improper, or indecent" are too vague for the triers of fact to apply, nor were they too loose to apprise the defendant of what he is charged.

Thus, in People v. Jensen, 392 Ill. 72, 64 N.E.2d 1, 2, in construing a statute from a portion of which our act appears to have been taken, the Supreme Court of Illinois stated:

"* * * Defendant argues further that the words 'immoral, improper and indecent,' employed in the statute and contained in the indictment, are beyond the understanding of a layman. In the construction and application of a statute words are to be given their generally accepted meaning, unless there is something in the act indicating that the legislature used them in a different sense. In People v. Friedrich, 385 Ill. 175, 52 N.E.2d 120, involving a prosecution under an analogous statute prohibiting the exhibition and offering for sale of obscene and indecent pictures, we recently held that the words 'obscene' and 'indecent' are of common usage, and are ordinarily used in the sense of meaning something offensive to the chastity of mind, delicacy and purity of thought, something suggestive of lust, laciviousness [sic] and sensuality. A like meaning may be ascribed to the words, 'immoral, improper, and indecent,' in the present case."

The trial judge charged in part as follows:

"* * * Most of these words you know. You start off with the offense, 'who shall take or attempt to take any immoral, improper, or indecent liberties'; well, immoral, you know what it means; improper, you know what that means, and indecent—'liberties with any child of either sex under the age of sixteen'. Now it is not sufficient just to take those indecent or immoral liberties, but it must be 'with intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person (in this case the defendant) or of such child'. So the 'indecent liberties' must be taken with the intent of arousing, appealing to, or gratifying the lust or passions of one of the persons, either the girl or of the man. * * *"

We fail to find any field of operation for the contended unconstitutionality of the statute as applied in this case. Accordingly, the judgment below is due to be

Affirmed.