290 So.2d 246

**George W. MOORE**

v.

**STATE.**

**3 Div. 132.**

Court of Criminal Appeals of Alabama.

Feb. 12, 1974.

B. F. Lovelace, Brewton, for appellant.

William J. Baxley, Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of murder in the first degree and was sentenced to

death. At arraignment he was represented by a court-appointed lawyer and interposed two pleas, (1) not guilty and (2) not guilty by reason of insanity. On this appeal he was furnished a free transcript of the trial proceedings and the attorney who represented him at trial represents him in this court.

At the time of the homicide appellant was an inmate of the Holman Prison Unit at Atmore, Alabama. The deceased, Robert E. Kendricks, was a correctional officer at the prison. On March 23, 1971, Kendricks died from knife wounds inflicted upon him by appellant.

Assistant State Toxicologist, Nelson E. Grubbs, performed an autopsy on the body of Kendricks and described the external wounds as follows:

"There were ten (10) wounds on the external surface of the body, a broken tooth and a cut inside of the lip. The first wound, starting at the head, was a scratch on the lip outside of the mouth. Of course, a cut on the inside and a broken tooth is considered as one wound. Then, there was a $\frac{7}{8}$ inch cut on the right shoulder about this particular area which is roughly three (3) inches below the tip of the shoulder. And there was a one and a half (1½) inch wound on the right side. It was one and a half (1½) inches long; it's two (2) inches below the armpit. Right in this area I'm indicating here. There was another wound in the abdomen of the body which was a small wound, one (1) inch wound, at an angle of thirty (30) degrees to the axis, the perpendicular axis of the body. This wound was just at the point I'm indicating here which is three and a quarter (3¼) inches below the nipple line and to the left of the midline. And measured this way and this way. This wound penetrated into the body and into the tip of the heart, cutting the end of the heart practically off. It was just hanging by a bit of muscle. There was another wound three (3) inches below

the armpit on the inside of the left arm. On the left hand on the forefinger there was a cut on the forefinger, a cut on the middle finger, and a Y-shaped cut on the thumb. These were down to the bone on the thumb. Then there was another cut on the back. It was two and a half (2½) inches long. It was ten (10) inches below the shoulder blade."

According to this witness the two wounds causing death were those penetrating the heart and the right lung. Photographs showing all the wounds were introduced in evidence without objection.

About mid-morning on the day he was killed, the deceased had escorted a group of prisoners from their cell blocks to the prison lunchroom. After lunch most of the inmates had been returned to their cells and the deceased stopped to advise another prison guard that some prisoners, including appellant, were in the area of the hospital located near the lunchroom. According to the state's witnesses they saw appellant walking rapidly up the hall toward the deceased and without any provocation or hesitation attack and stab the deceased four times. They heard the deceased shout, "Oh, Oh, Oh, Oh", and saw him back away from appellant, turn and run up the hallway holding his stomach, and they saw appellant pursuing him. After appellant had taken about ten steps, another guard stepped in front of him. Appellant was still holding the drawn knife in his hand. Appellant told this guard that he had stabbed Kendricks and hoped that he had killed him. Appellant was asked to surrender the knife. At this point two more guards arrived and appellant gestured toward them with the knife and said, "If you come on in on me I'm going to kill you, too." Appellant was persuaded to give up the knife and was carried directly to the office of the captain of the guard.

All the state witnesses who saw the difficulty testified that the deceased had no weapon of any kind at the time he was stabbed and had made no gestures or mo-

tions toward appellant. Many witnesses observed appellant immediately after the attack and there were no visible signs of wounds, abrasions or bruises.

The testimony of the witnesses on behalf of appellant, most of whom were his fellow inmates, was in sharp conflict with the state's witnesses. In sum they testified that the deceased had been picking on them all morning and particularly while they were eating lunch, urging them to finish lunch and get back to their cells. They claimed that while appellant was walking back to his cell he stopped to talk to another convict and the deceased stepped up and struck appellant on his face and head with a slapjack or flapjack and saw him kick appellant. All of them testified that appellant was unarmed. They also claimed that from the respective positions of the other guards it was impossible for them to have seen the fight.

Appellant admitted that he was engaged in a fight with Mr. Kendricks on March 23, 1971. He said he had a knife on this occasion and had a knife at all times during his incarceration. He claimed the knife was necessary for his own protection. He further testified that he did not draw the knife until Mr. Kendricks hit him between the eyes with a billy club, slapjack or a flapjack. He said after he was hit he was stunned and lost control of his whole mental thinking and did not know if he cut or stabbed the deceased. He denied that after the fight he followed Mr. Kendricks up the hallway with the drawn knife and also denied that he threatened to kill two other guards.

Appellant further testified that he was given first aid treatment after the fight by a prison physician, Dr. J. B. Thomas, and that the doctor put mercurochrome, methylate, or iodine on the knots located on the top and the side of his head.

Several prison guards testified they closely observed appellant after the fight and that he was not injured in any manner.

Appellant said that all witnesses who testified in the case, including his own, gave false testimony.

Appellant claims error was committed by the trial court in denying his motion for a continuance because of the unavailability of the prison doctor who examined him after the difficulty. Appellant also claims error in the denial of his motion for change of venue, and in the overruling of his motion for a new trial. Embraced in his motion for a continuance was a request for a medical examination by doctors who are specialists practitioners in mental and nervous diseases. This motion was filed on May 4, 1971, the day the case was first called for trial. The trial court made the following order:

"The foregoing motion being presented to the court for the first time on this the 4th day of May, 1971, the date set by this court for the trial of the defendant George W. Moore and no supporting affidavits of any medical authorities or other evidence being shown to the court in support of said motion and said motion for a continuance being carefully considered by the court the same is herewith denied."

During the progress of the trial which was begun on May 4, 1971, a juror became seriously ill and a mistrial had to be declared. The case was again called for trial on November 16, 1971. During this six-month interim, appellant did not renew his motion for an examination by specialists in mental and nervous diseases. Neither did he renew his motion for change of venue.

There was absolutely no testimony in support of appellant's motion for the appointment of a lunacy commission seeking to establish that he was of unsound mind either when the homicide was committed or at his trial. This court and the Supreme Court have repeatedly held that the provisions of Section 425, Title 15, Code of Alabama 1940, are not mandatory. The court has the right to seek the aids provided in this section for advisory pur-

poses when the court, in its discretion, deems such aids will be helpful. Campbell v. State, 257 Ala. 322, 58 So.2d 623; Howard v. State, 278 Ala. 361, 178 So.2d 520; Boulden v. State, 278 Ala. 437, 179 So.2d 20; Kelly v. State, 45 Ala.App. 144, 227 So.2d 141.

■ Statutory requirements relating to inquiry into a defendant's sanity at the time of trial are within the sound discretion of the trial judge and his action is not reviewable on appeal except for abuse of discretion. Title 15, Section 426, Code of Alabama 1940; Kelly v. State, supra; Ex Parte Bush, 247 Ala. 351, 24 So.2d 353; Pearson v. State, 41 Ala.App. 366, 133 So. 2d 60; Sanders v. State, 42 Ala.App. 419, 167 So.2d 174.

The only evidence tending in any wise to show that appellant ever had a mental disorder came out in his direct examination. He testified that in 1948 he was examined by three certified psychiatrists in Springfield, Missouri, and the diagnosis showed that he was a schizophrenic paranoid.

■ We have carefully read appellant's testimony and it reveals a marked degree of clarity. He handled himself well during cross-examination. His testimony does not indicate any mental aberrations or disordered mind. There is nothing in this record that tends to show in the slightest degree that he was incompetent to stand trial and to fully cooperate with counsel in his defense. He made several outbursts during the trial and had to be cautioned by the court. He became upset by the testimony of the prison guards relating to how he stabbed the deceased and requested that he be permitted to leave the courtroom so that he would not have to listen to the lies they were telling. His request was denied.

There was no error in denying the motion for a mental examination.

In his petition for change of venue, appellant alleges:

"This Defendant further shows unto this court that he is charged with killing Robert E. Kendricks, a guard at the Holman Prison near Atmore, Alabama. He further shows unto this court that at the time of the killing he was a prisoner at Holman Prison. He further shows unto this court that since the fight between he and Kendricks there has been considerable publicity concerning this incident; that many expressions of malice and hatred have been by many citizens of said county; that many expressions of opinion as to the guilt of this defendant have been openly made by citizens throughout Escambia County; that there is a feeling of distrust against all the prisoners of Holman Prison among the citizens of Escambia County, Alabama.

"The premises considered the undersigned George W. Moore makes the application averring that he does not feel he will obtain a fair trial in Escambia County, Alabama and ask that his trial be removed to the nearest county free from such exceptions and ask this court to enter an order removing said case to another such county.

"/s/ George W. Moore

"Sworn and subscribed to before me on this the 4th day of May, 1971.

"/s/ B. F. Lovelace,

Notary Public."

The court's order in denying the petition is as follows:

"The foregoing motion for change of venue being presented to the court on this the 4th day of May, 1971 the date set by this court for the trial of said cause and no evidence being offered in support of said motion by the defendant the said motion is herewith DENIED.

"Dated this the 4th day of May, 1971.

"/s/ Douglas S. Webb

Circuit Judge."

There was not one tittle or threat of evidence in support of this petition.

On matters of this kind the defendant has the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial cannot be had and that an unbiased verdict cannot reasonably be expected. Campbell v. State, supra; Godau v. State, 179 Ala. 27, 60 So. 908; Patton v. State, 246 Ala. 639, 21 So.2d 844.

There was no error in overruling the petition for change of venue.

Appellant filed a motion for a new trial, supported by affidavits, contending that he was denied his constitutional rights to have a lunacy commission appointed to inquire into his sanity. The motion was also predicated on newly discovered evidence, in that the foreman of the jury was heard to say, prior to trial, "If I get on that jury I am going to do all I can to see that that convict gets the electric chair, something has to be done to control those prisoners."

A full blown hearing was had on the motion for a new trial. At the conclusion of the hearing the court overruled the motion. The evidence adduced at the hearing fell far short of that required to overturn a verdict of the jury.

In reviewing the refusal of a motion for a new trial this court will indulge every presumption in favor of the correctness of the ruling of the trial judge and the decision thereon rests largely within the sound discretion of the trial court. Heath v. State, 30 Ala.App. 416, 7 So.2d 579; Espey v. State, 270 Ala. 669, 120 So. 2d 904; Page v. State, 41 Ala.App. 153, 130 So.2d 220.

There was no error in overruling the motion for a new trial.

There was no error in the refusal of appellant's several written charges. The requested charges were substantially covered in the oral charge of the court and the given charges. Golden v. State, 39 Ala.App. 361, 103 So.2d 52; Garrett v. State, 268 Ala. 299, 105 So.2d 541; Cooper v. State, 277 Ala. 200, 168 So.2d 231.

Guided by our Supreme Court in Hubbard v. State, 290 Ala. 118, 274 So.2d 298, and related cases, the sentence of death imposed upon appellant is vacated and set aside. The sentence is corrected to provide that George W. Moore be imprisoned in the state penitentiary for a term of his natural life. The Clerk of this Court shall furnish a certified copy of this order to the Clerk of the Circuit Court of Escambia County and the Clerk of that Court shall issue a commitment in this case based upon this sentence of life imprisonment and forward the commitment to the Board of Corrections.

Judgment modified and the case is affirmed.

Judgment modified and case affirmed.

All the Judges concur.