307 So.2d 59

**Sterl JONES**

v.

**STATE.**

**1 Div. 549.**

Court of Criminal Appeals of Alabama.

Jan. 21, 1975.

No brief for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of the offense denounced by Title 14, Section 326(2), Code of Alabama 1940, as last amended, which provides, in pertinent part, as follows:

"It shall be unlawful for any person to take or attempt to take any immoral, improper, or indecent liberties with any child of either sex under the age of sixteen years, with intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child, or to commit, or attempt to commit any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, with an intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child. * * *"

Appellant was represented at arraignment and trial by employed counsel. He is not indigent but no brief has been submitted in this court in his behalf. The state has filed a brief.

The jury found appellant guilty as charged in the indictment and the court sentenced him to five years imprisonment in the penitentiary.

The evidence was in sharp conflict. The testimony adduced by the state made out a clear case of guilt. The testimony on behalf of appellant tended to establish an alibi.

The victim was a nine-year old girl living with her parents and two half-brothers, ten and eleven years of age. Appellant was a fifty-six year old man, who was formerly married. The offense allegedly occurred on the afternoon of April 16, 1974, in Frisco City, Monroe County, Alabama.

The victim testified that when she arrived home from school about 3:30 P.M. on April 16, 1974, appellant and his retarded son were at her home eating fish that appellant had given her parents earlier in the day. She and her two half-brothers sat at the table and ate fish, too. About thirty minutes later, appellant asked her parents if he could carry her and her brothers horseback riding. Permission was granted and the victim got in the cab of appellant's pickup truck. She was sitting between appellant and his retarded son. Her brothers rode in the back of the truck. The pony they were going to ride was at the home of another son of appellant's some three or four blocks from the victim's home in Frisco City. When they got to the place where they were to ride the pony, appellant suggested that the victim's brothers get out of the truck and remain there until he returned but they refused to leave the truck. Appellant drove around Frisco City and while riding he put his hand up and under the victim's shirt and she pulled his hand away. Appellant made two short stops and started back to where the children were to ride the pony. On the way back, he put his hand inside the victim's underpants. When he got to the place where the pony was, he stopped and everyone got out of the truck. While appellant was leading the pony for the brothers to ride, appellant's retarded son put the victim on the ground and held her there until the boys were through riding. He let her up and she walked to the pony and appellant helped her mount. He led the pony behind a shed to the stable and the retarded boy told the brothers not to go behind the shed but they had a clear view of appellant, the victim and the pony. They saw appellant put his arms around the victim's neck and hug her and they saw him trying to kiss her. She managed to push him away from her and returned to the truck. She was forced to ride in the cab

again between appellant and the retarded boy. When appellant was driving them home, he told the victim that she had better not tell her mother and father. It was almost 6:00 P.M. when appellant brought them back home.

The victim's mother was in her car preparatory to making a trip to the grocery store when appellant brought the children home. He let them out and drove away without saying a word. The boys went in the house but the victim got in the car with her mother. According to the victim's testimony there was another woman in the car and she was too embarrassed to tell her mother what appellant had done to her. When her half-brothers got in the house, they told their father everything they had observed appellant do to their sister. When the mother and the victim returned from the grocery store and entered the house, the father told the story to her and the victim started crying and said, "Mother, I was just fixing to tell you."

The parents immediately carried the victim to the office of Dr. B. L. Hanks in Frisco City. Dr. Hanks's qualifications were admitted and he testified that he conducted a vaginal examination. We quote from the record:

"Q. What did your examination show, Doctor?

"A. Well, as I said, normally, there's a thin membrane over the outlet of the vagina in a young girl—there's a thin membrane covering and it's solid—there is no hole in it—in a young girl—and on this child, there was a hole in it approximately half an inch in diameter that I could have put my little finger through.

"Q. Did that hole appear to have been recently placed there?

"A. Yes, the tissues were redder than they should have been and appeared to be irritated. There was no definite scratch mark but it was irritated and redder than it should have been.

"Q. And it appeared to have been recently done?

"A. Yes."

On cross-examination, the doctor testified:

"Q. Aren't there a number things that could cause that membrane to burst, Doctor?

"A. Well, I suppose actually it could happen but it wouldn't be likely to happen. She would have to fall on some sharp object and that would do more damage than just a membrane being torn.

"Q. Could horseback riding cause it?

"A. I don't think so."

Appellant testified that he did take the victim and her two brothers horseback riding but it was not on the day of the alleged incident—it was a week or ten days prior to April 16, 1974; that on the day he did take them to ride the pony he did not put his hands on the girl except in helping her to mount the pony.

Appellant denied that he was at the home of the victim's parents on April 16, 1974, and he did not give them any fish and did not eat fish with the family. He further denied that he drank any alcoholic beverages on that occasion as testified to by the mother of the victim.

The deputy sheriff who arrested appellant the night following the complaint of the victim testified that there was a strong odor of alcohol on his breath.

Other members of appellant's family testified that he was with them all afternoon of the alleged incident; that he ate lunch and supper with them and did not leave until about dark to go to his home. Suf-

**254**

fice it to say, had the jury chosen to believe the testimony of appellant and his alibi witnesses, a not guilty verdict would have been rendered. It was solely within the province of the jury to accept the state's version of the case and reject appellant's testimony and that of his alibi witnesses.

 In a prosecution for taking indecent liberties with a girl under the age of 16 years, evidence presented by the state as to the condition of the girl's genitals after the alleged offense was competent, material and relevant. Slagle v. State, 39 Ala. App. 691, 108 So.2d 180.

 Conflicting evidence always presents a question for the jury as to the guilt of the defendant unless the evidence palpably fails to make out a prima facie case. Morris v. State, 47 Ala.App. 132, 251 So.2d 629; Irons v. State, 42 Ala.App. 349, 165 So.2d 125; Bradford v. State, 35 Ala.App. 407, 47 So.2d 599.

 Appellant's motion for a new trial was overruled and denied. In reviewing the refusal of a motion for a new trial, this court will indulge every presumption in favor of the correctness of the ruling of the trial court and the dicision thereon rests largely within the discretion of the trial judge. Espey v. State, 270 Ala. 669, 120 So.2d 904; Page v. State, 4- Ala.App. 153, 130 So.2d 220; Owens v. State, 40 Ala.App. 36, 109 So.2d 141; Moore v. State, 52 Ala.App. 179, 290 So.2d 246 (1974).

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.