Second degree murder; sentence: fifty years' imprisonment.
The evidence presented clearly established that on September 3, 1979, the appellant shot T.J. Williams twice with a pistol which resulted in Williams's death. There was evidence that the appellant and the deceased had some difficulty earlier that day. There were some words exchanged including a threat on the part of the deceased to kill the appellant with a knife. The appellant walked away from the confrontation.
Later that evening the deceased started back to the appellant's house, but was stopped by a friend, Robert Copeland, and persuaded not to go there because appellant did not want the deceased at his house. However, a short time later the deceased went to appellant's house, climbed over the banister on the front porch, and advanced toward the appellant. The appellant pulled a pistol and shot him twice. No one saw a weapon on the deceased and none was found at the scene.
The appellant's defense was that of self-defense. However, testimony was presented from which the jury could rightfully conclude that the circumstances of the killing did not fall within the legal definition of self-defense. There was evidence that when the first shot hit the deceased he was knocked back over the banister and into the yard. Witness Gloria Jean Washington testified that when she heard the first shot and saw the deceased fall over the banister she ran from inside the appellant's house into the yard to aid the deceased. The deceased was lying on his back, and she tried to pick him up when the appellant fired a second shot which hit her in the arm and then penetrated the deceased's abdomen.
The State presented a prima facie case, and the jury did not believe the shooting was done in self-defense. Conflicting evidence always presents a jury question unless the evidence palpably fails to establish a prima facie case. Jones v. State,54 Ala. App. 251, 307 So.2d 59 (1975); Higginbotham v. State, Ala.Cr.App., 346 So.2d 525 (1977).
Appellant contends that the trial court erred in not granting his motion for a new trial. The ground of that motion relied upon by appellant states:
 "During the trial of this case, the defendant was surprised by the use of a signed statement of defendant's witness, Robert Copeland, which statement was used by the State for impeachment purposes. Prior to the trial and during the month of October or November of 1979, the defendant's attorney requested of the district attorney a copy of all statements of witnesses or persons interviewed by the State from whom statements were taken. No formal motion for production was made to the district attorney's office since it is a common practice in this court that the district attorney will furnish, upon request of the defendant's attorney, copies of any statements which resulted from his investigative process. The statement which the district attorney's office obtained from the defendant's witness, Robert Copeland, was not given to the defendant's attorney. A prior knowledge of the contents of the statement used by the State for the impeachment of the witness, Robert Copeland, would have resulted in a different trial tactic on the part of the defendant's attorney in this, to-wit: The defendant would not have called the witness, Robert Copeland, to testify, and the signed statement of such witness previously obtained by the district attorney's office would not have been used. The use of this statement by the State created bias against the defendant, thereby resulting in a verdict contrary to law."
The present issue arose when Robert Copeland, an eye-witness to the shooting, testified for the defense. He stated that the deceased was at the appellant's home earlier on the date of the shooting. He had led the deceased away from the appellant's home and warned him not to go back because the appellant did not want him there. *Page 340 
The deceased, however, disregarded that warning and returned to the appellant's house. He climbed over the banister onto the front porch at which time the appellant shot him twice.
Copeland testified that the first shot knocked the deceased over the banister into the yard and that when the second shot was fired, "I guess he was in the yard." However, his testimony then became unclear as to whether the second shot was fired after the deceased was on the ground. He next said the two shots were in rapid succession. From the record:
 "Q. Isn't it a fact that after the first shot was fired T.J. was knocked over the railing back into the yard, that Sam walked up to the railing and leaned over and shot T.J. down there on the ground?
"A. I didn't see it that way, no.
 "Q. You didn't see it that way. Well, how did Gloria have enough time to get out from inside to get over there around that railing to T.J. and get hit by the second shot.
"A. I didn't see it that way.
 "Q. You didn't see it that way? On November 14th, 1979, did you give a statement to Grady Reeves and Bruce Devane concerning this shooting?
"A. I did.
"Q. Is this that statement? Is that your signature?
"A. Yes.
"Q. And you told what you saw?
"A. That's right.
"Q. And that statement is true?
"A. If they got down there what I told them it is.
 "Q. All right. Did they read it back to you or did you read it?
"A. No, sir. I can't read too good.
"Q. Did they read it to you?
"A. No.
 "Q. You mean you gave them a statement and they didn't read it back to you?
"A. No, sir.
"Q. Well, in that statement —
"MR. CLOWER: Well, let him examine it, Court please.
 "MR. BARR: He said he couldn't read, Your Honor, and I was going to read it. He just stated he couldn't read.
 "MR. CLOWER: Well, then, if he hasn't read the statement, it's a statement that's not admissible. He can testify as to what he saw and everything now, but no prior statement would be admissible.
 "MR. BARR: If I establish a prior and inconsistent statement I can ask him if he said this or not, if it please the Court.
"MR. CLOWER: Go ahead.
 "Q. In the statement that you gave on November 14, 1979, to Detective Reeves, isn't it true that you said, that Williams then said something to Starling that you could not understand and climbed over the banister towards Starling, Starling then fired a shot and hit Williams causing him to fall backwards over the bannister on the ground. Williams was laying (sic) on his back when Starling walked out onto the porch, leaned over the banister and shot Williams the second time, he was still laying (sic) on his back?
"A. I didn't say it like that.
"Q. You didn't say it like that?
"A. I sure didn't."
Counsel for appellant did not claim surprise. He only made a comment that if the appellant had not read the statement it was not admissible. That comment was not made in the form of an objection. The prosecutor replied, "If I establish a prior and inconsistent statement I can ask him if he said this or not, if it please the Court," to which defense counsel replied, "Go ahead."
Grady Reeves, one of the police officers who investigated the shooting, was later called by the State as a rebuttal witness. Reeves testified that on November 14, 1979, he was present when Bruce Devane took a statement from Robert Lee Copeland. No coercion or duress was applied to Copeland to obtain the statement, and Copeland was not a suspect of any crime at the time. Reeves said Copeland gave the statement freely and voluntarily. Devane reduced the statement to writing in the presence of Reeves and Copeland. The statement was *Page 341 
read back to Copeland who acknowledged that it was correct and signed it in the presence of Devane and Reeves.
The defense moved to exclude the statement without assigning any grounds, and the trial court overruled. Again, defense counsel failed to claim surprise. The statement, which was the same one which Copeland acknowledged on the witness stand as bearing his signature, was read into evidence. In pertinent part the statement was that the deceased:
 "climbed over the bannister towards Starling. Starling then fired a shot and hit Williams causing him to fall backwards over the banister out onto the ground. Williams was lying on his back when Starling walked out onto the porch, leaned over the banister and shot Williams the second time. He was still laying (sic) on his back. Gloria Jean Washington was holding Williams during the second shot. Gloria Jean had gotten up and ran to Williams after the first shot was fired."
Defense counsel then cross-examined Reeves at length concerning the statement and made no further motions or objections.
We find the prior contradictory statement of Reeves to have been properly admitted into evidence.
"A witness cannot be impeached by proof of contradictory statements made by him, whether oral or in writing, without first asking him whether he made such declarations." Edwards v.State, 279 Ala. 371, 185 So.2d 393 (1966). A proper predicate for the introduction of a prior contradictory statement requires that the witness to be discredited must have called to his attention the time, place and person involved in the contradiction "in order that the faculties of the mind may be put in motion, and the memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject-matter of inquiry. . . . The rule, however, is satisfied, when the attention of the witness is called with reasonable certainty to the subject of the previous declarations." Nelson v. Iverson, 24 Ala. 9, 60 Am.Dec. 442 (1853). Also see Bridges v. State, 225 Ala. 81, 142 So. 56
(1932); Edwards, supra, and the latest expression of our supreme court on this subject, Ex parte Jackson, Ala.,389 So.2d 948 [1980].
In the instant case the witness to be contradicted was made fully aware of his prior statement and acknowledged the occasion and his signature, but contended that the written statement was not what he told the officers. The predicate was therefore properly laid for either or both of the officers present when the statement was given to testify that the statement did in fact reflect exactly what the witness had told them.
As to the issue of surprise, we find that it was not timely raised. Objections to admission of evidence must be made at the time the evidence is offered and must state specific grounds.Hargrove v. State, Ala.Cr.App., 344 So.2d 823 (1977); Slinkerv. State, Ala.Cr.App., 344 So.2d 1264 (1977). A trial court will not be put in error on grounds not assigned. Johnson v.State, Ala.Cr.App., 364 So.2d 1187 (1978); Rogers v. State,53 Ala. App. 573, 302 So.2d 547 (1974). The appellant did not raise the issue of surprise during the course of the trial. He raised that issue for the first time in his motion for new trial.
Even assuming the issue could be raised for the first time on motion for new trial, we still find no error. The granting or refusing of a motion for new trial is a matter addressed to the sound discretion of the trial judge which is subject to revision only in cases of gross abuse of that discretion. Moorev. State, 52 Ala. App. 179, 290 So.2d 246 (1974). We find no abuse of discretion on the part of the trial judge in this instance.
During the hearing on the motion for new trial, it was brought out that counsel for appellant had gone to the district attorney's office twice requesting statements from witnesses. Both times he was given free access to the files and obtained any statements contained therein at the *Page 342 
time. Counsel for appellant admitted that he made no formal motion for discovery or production, but contends that his verbal requests had the same force and effect of a motion to produce. Counsel argued to the trial judge that such a motion "is a continuing thing for anything else that the District Attorney would obtain up until the time of trial. I assume that maybe his investigations are continuing. If I am wrong in that, then the burden was on me to come back every day or every week to see if he had anything new, which I did not do."
Certainly the trial court did not abuse its discretion in refusing to grant the motion for new trial based upon the above contention by defense counsel. There is no allegation nor showing that the prosecutor withheld evidence favorable to the appellant per Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). Likewise, there is no constitutional right to discovery and Brady v. Maryland, supra, did not create one.Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837,51 L.Ed.2d 30 (1977).
If defense counsel wanted statements of witnesses which were not in the prosecutor's files or wanted future statements, he should have requested such from the prosecutor and even checked the prosecutor's file immediately before going to trial. We know of no rule of law which allows counsel to be less diligent just because the "accepted procedure" is that a motion to produce is unnecessary where the prosecutor generally allows defense attorneys to inspect his files. Here, the witness who "surprised" defense counsel was his own witness. He had complete access to the witness and should have known through pretrial interviews that his witness had been questioned by the police. Certainly, the trial court did not abuse its discretion in denying the motion for new trial under those circumstances.
We have reviewed the other contentions of appellant and find them to be without merit. We find no error in the record.
AFFIRMED.
All the Judges concur.