282 So.2d 418

### Clarence SHEPARD, Jr.

### v.

### STATE.

### I Div. 309.

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

Donald E. Brutkiewicz, Mobile, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Samuel L. Adams, Special Asst. Atty. Gen., Dothan, for the State.

## PER CURIAM.

Clarence Shepard was convicted of the offense of assault with intent to murder by the Circuit Court of Mobile County; was sentenced to five years imprisonment, and he appealed.

On the second day of October 1971, Charles Kelly was driving his car on a rural road in Mobile County returning home from Citronelle when a shotgun blast shattered the windshield. Pellets from the gun and flying glass injured the driver and other occupants of the car. In the car with Kelly was his daughter, his mother-in-law, and a female companion with whom Kelly had been having illicit relations. No one was seriously hurt by the firing of the gun. Immediately after the blast the defendant, who in the past had also had illicit relations with the female companion, was observed in the road behind the car with a shotgun in his hand.

After hiding the gun in a wooded area the defendant went to a phone and reported the shooting and waited to be taken into custody. While in jail he voluntarily wrote out a statement which he handed

voluntarily to a sheriff's deputy. The statement as written was as follows:

"October 3, 1971

This is an statement of what happen [sic] on the 2nd of Oct. I came up to town to catch a ride to russell to pick up my gun.

"I had a man tath [sic] i was going to sell the gun to for $15.00. I had the gun hidden in the wood in russell so that no one could find it. it was hidden across from Raymond Loard house. I knew that I couldn [sic] be seen carring [sic] the gun over there. so when I was coming out of the wood [sic] I heard a car coming so I ran across the road and hid in the bushes.

"As the car got closer to me I knew it was Charles Kelly. I had heard talk that he was going to kill me if he saw me over the road. I knew that I couldn [sic] let hin [sic] see me. I hid behing [sic] a pine tree, and before the car pass [sic] i thought that I saw his hand out of the window with some thing in it. I wasn [sic] for sure that he did see me when I cross [sic] the road. so I had the gun in my hand when he pass [sic] and was trying to keep out of sight. as i was turning as the car pass [sic] some thing mut [sic] have caught the trigger and the gun went off. I had no intention of shooting him. I was going to use the money for selling the gun to get back to Mobile and go to work.

Sign:

/s/ Clarence Shepard, Jr."

This statement was properly admitted in evidence without objection.

All of the occupants of the car testified that the driver was unarmed and that the shooting was unprovoked, and that they did not even see the defendant until after the shooting. Their testimony made out a case of ambush and unprovoked assault with a deadly weapon.

The defendant was the only material witness to take the stand for the defense. His version of the incident on direct examination was as follows:

"Q. All right. Now, listen to me, now, Clarence. Prior to that time, prior to going up there on that morning that the shooting took place, did you have any conversation with a man by the name of L. C. Turner?

"A. That's right. We did have a conversation in Citronelle.

"Q. All right. What if anything did L. C. Turner tell you?

"A. We was sitting around drinking beer and everything,—

"MR. BRUNSON: Judge, I'm going to object to it as being hearsay.

"THE COURT: All right, sustain the objection.

"MR. BRUTKIEWICZ: Well, it's a threat communicated, Judge. We have a right to go into a threat communicated to him.

"MR. BRUNSON: No, sir, Judge.

"MR. BRUTKIEWICZ: Judge, I think you should listen to me—

"THE COURT: All right. Let's take this argument up outside the presence of the Jury. Show me your law.

"(Whereupon, the Jury was removed from the courtroom and the following took place outside the presence and hearing of the jury:)

"(Whereupon, Mr. Brutkiewicz presented legal argument to the Court; Mr. Brunson presented legal argument to the Court; after which the Court had this to say:)

"THE COURT: All right. I'll rule on it at that time, if there is such evidence. All right, bring the Jury back in.

"(Whereupon, the Jury was returned to the courtroom and the following was had and done before Court and Jury:)

"BY MR. BRUTKIEWICZ:

"Q. All right. We got you down on that road that is part of the Johnson Clay Pit, or dirt pit. Do you remember that morning?

"A. I remember it.

"Q. All right. Your were down on that road, were you?

"A. Yes, sir.

"Q. All right. You had a shotgun?

"A. That's right.

"Q. That's this shotgun here?

"A. That's right.

"Q. Did you see the car owned by Kelly?

"A. I saw it.

"Q. All right. What happened then?

"A. I got outside, got out the way in the bushes.

"Q. All right. What happened then? What did you see, hear, or do next?

"A. I just seen the car come on down the road. Seemed like it was a flash. I didn't know whether it was a mirror or gun or what it was.

"Q. What did you—

"A. I thought it was a gun.

"Q. You thought it was a gun?

"A. After he had threatened me if I come over there—

"Q. All right. What did you do beings you thought it was a gun and he had threatened you, what did you do then?

"A. I got in the bushes.

"MR. BRUNSON: Judge, I move to exclude the unresponsive portion of the answer about the threat.

"THE COURT: All right. The jury will consider only that portion of the answer that was responsive to the question, itself.

"BY MR. BRUTKIEWICZ:

"Q. You saw something in the complainant's hand that you thought was a gun?

"A. That's right.

"Q. Now, Clarence, on that road, if that man had a gun, was there any way in the world you could outrun that pistol and the bullet?

"A. Wasn't no way. I mean, coming from this way was a house sitting over there and it was clear over this way and all back this way is clear except for some bushes back over there. And I was caught between two crossroads there, and I had to get out the way. I had to just jump to the side and get in the bush.

"Q. All right.

"A. I didn't have no other way to go.

"Q. All right. Seeing that pistol in his hand, what if anything did you do?

"A. I don't understand.

"Q. Go ahead. You saw the pistol in his hand, and then what happened next?

"A. Well, I just—

"MR. BRUNSON: Now, Judge, I'm going to object, again, to Mr. Brutkiewicz; he's testifying.

"THE COURT: Sustained.

"BY MR. BRUTKIEWICZ:

"Q. What did you do? Tell the jury, now, son. Come on now. You're in trouble. Tell the jury what happened.

"A. I got behind the tree and then when the car passed on by, and some kind of way the gun just went off. The car had done passed because the car had done passed me from here to there and the gun just went off after he had done passed me from here to there. The gun went off.

"Q. Now, I ask you whether or not any threats made by Kelly had been communicated to you, told to you?

"A. That's right.

"MR. BRUNSON: I'm going to object—I'm going to object.

"THE COURT: All right, sustain the objection.

"MR. BRUTKIEWICZ: Well, it's in the confession, Judge. It's been brought out, the State has brought out in the confession. Now, Judge, it's the pagan law of the State of Alabama. Now, once the State goes into something, the defense has got a right to go into it and the statement that has been introduced which is State Exhibit 3, is evidence of threats. If they bring it out, I have got a right to go into it.

"THE COURT: All right. I have sustained the objection. Proceed."

■ On appeal the defendant claims error on the part of the trial court in not permitting proof of threats made by the driver of the car against the defendant. Error is also claimed by reason of the refusal of certain written charges requested by the defendant concerning acts done in a fit of sudden passion caused by provocation.

In order for threats to be admissible in aid of self-defense there must first be evidence of self-defense. Holland v. State, 24 Ala.App. 199, 132 So. 601.

The testimony of the defendant as shown above fails to disclose that his actions were in defense of his person. In effect, his position seems to be that he did not fire the shotgun, but if he did do it, it was in self-defense. As has been read above, he states that the gun went off after the car had passed him as he was concealed in the bushes. If such be the improbable case, then all peril to himself passed with the passing of the car, and self-defense would have been out of the question. No proof of self-defense having been put in evidence, the court properly excluded proof of threats.

■ The same reasoning applied to the refusal of the requested written charges. At best they were abstract in so far as the case under review is concerned. The State's case showed an ambuscade, the defendant claimed an accidental shooting. Under neither version was an act of sudden passion in issue, therefore, there was no need for the court to charge thereon. The trial court in its oral charge took great pains to fully inform the jury as to every element of proof required of the State in order for the defendant to be found guilty of the offense of assault with intent to murder. Numerous written charges requested by the defendant were also given.

From reviewing the record as a whole, we are convinced there was no error on the part of the trial court prejudicial to any substantial rights of the defendant, and the judgment of the circuit court is therefore affirmed.

Affirmed.

All Judges concur.