497 So.2d 194 (1985)
Randy Lee MATKINS
v.
STATE.
8 Div. 1.
Court of Criminal Appeals of Alabama.
November 12, 1985.
Rehearing Denied January 28, 1986.
Phillip B. Price, Huntsville, for appellant.
*195 Charles A. Graddick, Atty. Gen., and Jane LeCroy Brannan, Asst. Atty. Gen., for appellee.
George Hugh Jones of Parker & Dawson, Birmingham, amicus curiae on behalf of appellant.
LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a trial by jury on an indictment charging defendant with murder as proscribed by Alabama Criminal Code, § 13A-6-2(a)(1) and (2), a Class A felony. At the sentence hearing, it was shown that defendant had been previously convicted of at least three felonies, and the court sentenced him to imprisonment for life without parole pursuant to the Habitual Felony Offender Act, particularly § 13A-5-9(c)(3).
Although four separate issues are presented in brief of counsel for appellant, the pivotal issue between the parties on appeal is whether the trial court was in error in not charging the jury as to whether it could or should return a verdict finding defendant guilty of a lesser included offense, specifically manslaughter, as defined by § 13A-6-3 or criminally negligent homicide, as defined by § 13A-6-4.
Although it seems that counsel for appellee does not contend that the evidence in the case failed to furnish a basis for jury determination that defendant was guilty of either of the two lesser offenses only, we think it appropriate to give a brief summary of the pertinent evidence, which is found in brief of counsel for appellee as follows:
"On Christmas night, 1982, while he was on leave from the State penitentiary, Randy Lee Matkins shot James Willie `Skip' Askins in the face and killed him. Matkins testified that he sat down at a table at the Huntsville VFW Club with several people in an empty chair and that Skip's wife, Delores came up and told him that he was in her seat. Matkins ignored her and Skip, who was in the seat next to Matkins, told Matkins that Delores was his wife. Matkins did not say anything and Skip told him again that he was in Delores's seat. Matkins asked Skip `Are you trying to get smart?' and Skip said, `No.'
"Matkins had a .32 automatic pistol in his pocket. Matkins stood up and took his pistol out of his pocket.
"Matkins testified that he intended `to fist fight' and that he wanted to `pass it to Linda,' but that the gun discharged when Skip and Dean Askins, Skip's brother jumped him, accidentally hitting Skip in the face.
"Other witnesses had testified that Matkins just reached out and shot Askins and that there was no scuffle. Each of the witnesses who were sitting at the table with Skip and Matkins testified that Matkins pointed the pistol at Skip and fired and then ran out of the club. Matkins was serving time for second degree murder at the time of Skip's death. He had also been convicted of assault with intent to murder and theft. Matkins had drunk about a `fifth and a half' of liquor that day."
According to the testimony of the defendant, he went to the VFW Club at "about 10:30 that night," that Linda Batts, whom he was dating during this period of time, was at the club, that he sat down on the bench close to Linda, to which the victim's wife, Delores, approached and an argument then ensued between him and the victim, and the defendant then prepared for a fist fight with the victim. His testimony continues in part as follows:
"Q. All right. What did you do with the pistol?
"A. I took it out with my left hand and I passed
"Q. Where did you take it out from?
"A. Off my side with my left hand. I had a brown sweater on. I took the pistol out with my left hand and I put it in my right hand and I was intending to pass it to Linda.
"Q. You were handing the pistol to Linda?

*196 "A. I was intending to, but when I passed
"Q. Just a minute. Why were you handing the pistol to Linda?
"A. To fist fight.
"...
"Q. Did you intend at that time to get into a fist fight?
"A. At the present time, yes, sir.
"Q. Tell the Jury what happened next.
"A. Well, after I placed it in my right hand, before I could make a turn and hand it to Lindashe was on my right-hand side. Before I could make a turn and hand it to her he had jumped up and grabbed me.
"Q. Where did he jump up from?
"A. From the corner of the table where he was sitting.
"...
"Q. What happened next?
"A. After I made it to my right hand that's when James Willie Askins jumps up and grabs me. He grabbed my right hand, the one I had the pistol in, and me and him then scuffled two [or] three minutes.
"Q. Tell the jury what you mean by scuffle?
"A. Turning and twisting and one trying to keep possession and one trying to take possession, to get a better position.
"Q. Were you all actually in a fight?
"A. It was more of a situation to get ready for a fight.
"Q. Did you see Dean Askins?
"A. He entered the scuffle. I didn't know who he was. All I know is a third party entered the scuffle. Me and James Willie was scuffling around and this third party he entered the scuffle. When he entered the scuffle we started scuffling around again for two or three more minutes and then we fall back from the table, or back up toward the bench behind the table. We fall back that way. As we was falling back that's when the gun discharged.
"Q. Did you have your finger on the trigger?
"A. No, sir. I didn't.
"Q. Do you know who did?
"A. No, sir, I can't say.
"Q. Did you intend to shot [sic] James Willie Askins?
"A. No, sir. I didn't have any intentions for no one to be hurt."
In addition to the disagreement between counsel for appellant and counsel for appellee as to the pivotal issue, there is disagreement between them as to the effect of Rule 14 of the Alabama Rules of Criminal Procedure, effective July 16, 1982, which was prior to the date of the trial in the instant case, and which rule is taken almost verbatim from Rule 51, Alabama Rules of Civil Procedure. Attorneys for the Alabama Criminal Defense Lawyers Assocation joined with counsel for appellant as amicus curiae in stating and arguing the following proposition:
"RULE 14, A.R.Cr.P. NEGATES THE REQUIREMENT THAT REQUESTED CHARGES FOR A LESSER INCLUDED OFFENSE BE MADE IN WRITING AT THE CHARGE CONFERENCE TO PRESERVE ERROR FOR REVIEW BY OBJECTING AND STATING GROUNDS PRIOR TO THE JURY BEGINNING ITS DELIBERATIONS."
Reliance is had upon what was held in Gardner v. Dorsey, Ala., 331 So.2d 634, 636, as follows:
"The purpose of stating grounds for objections is to give the trial court an opportunity to correct the instructions and to avoid the waste of time and money from reversals that result from oversight, technical omissions, or remedial mistakes. New Orleans & Northeastern R. Co. v. Hewitt Oil Co., 341 F.2d 406, (5th Cir. 1965)...."
The transcript of the proceedings in the case sub judice shows that at the conclusion of the argument of counsel the following occurred:
"Ladies and Gentlemen, I realize that it is after five, but I believe that my charge will be relatively short and I think that I will go ahead and charge you now.

*197 "MR. PRICE [Defendant's attorney]: Your Honor, may I approach the bench?
"THE COURT: Yes.
"(The following occurred at the bench.)
"MR. PRICE: I specifically make a request in the record that there be a charge by the court on the lesser included offenses of manslaughter as well as negligent homicide; that the facts support a charge on both two lesser included offenses..
"THE COURT: All right."
At the conclusion of the court's oral charge, the following also occurred "out of the presence of the jury":
"MR. PRICE: At this time, at the conclusion of the Court's Charge, we object to the Court's failure to give the charges on the lesser included offenses of manslaughter and negligent homicide, in that the facts have brought out evidence that would warrant such charges.
"(Whereupon, the Court adjourned for the day.)"
Without further endeavor by us to assay the positions taken by the attorneys who have filed briefs as to the effect of Rule 14 of the Rules of Criminal Procedure upon the pivotal issue on appeal, we conclude that under the circumstances of what transpired as between the trial judge and defendant's counsel, particularly the oral request by defendant's counsel that the trial judge charge "on the lesser included offenses" designated, as well as the objection of defendant's counsel to the "Court's failure to give the charges on the lesser included offenses," the trial court committed error prejudicial to defendant in not instructing the jury as to said lesser included offenses. The judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
PATTERSON, TAYLOR and TYSON, JJ., concur.
BOWEN, P.J., concurs specially with McMILLAN, J., joining.
BOWEN, Presiding Judge, concurring specially.
I concur in the result reached by the majority but would address the application of Rule 14, A.R.Crim.P.Temp. to the facts of this case. I see no advantage to be gained by leaving everyone in limbo to await some further decision by this Court or the Alabama Supreme Court.
Rule 14 provides for the proper method of objecting to either the refusal of a written requested charge or the giving of an improper oral charge:
"No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Submission of additional explanatory instructions shall not be required unless requested by the court. Opportunity shall be given to make the objection out of the hearing of the jury."
This is identical to the language of Rule 51, A.R.C.P. Rule 14 was adopted by our Supreme Court to "harmonize the procedure regarding instructions in both civil and criminal cases." Ex parte Allen, 414 So.2d 993, 995 (Ala.1982).
In construing the identical language of Rule 51, our Court of Civil Appeals held that "the filing of written instructions at the close of evidence is discretionary and submission of additional explanatory instructions are not required unless requested by the court." Great Northern Land & Cattle, Inc. v. Firestone Tire & Rubber Co., 337 So.2d 1323, 1326 (Ala.Civ.App. 1976). In that case it was held that the defendant was not precluded from claiming error in the trial court's failure to charge *198 the jury on a matter in its oral charge because the defendant failed to file any written requested instruction.
The committee comment to Rule 51 supports this interpretation of the Rule:
"If the court upon hearing an objection to the charge declines to supplement or modify its charge, the matter is preserved for appellate purposes. Should the court, after hearing the objection, request submission of additional instructions, counsel would have to comply with the court's request in order to preserve the matter on appeal." 23 Ala.Code 1975 at p. 273.
Under the clear and plain language of both Rule 14 and Rule 51, a written requested instruction is not required in order to preserve error on appeal to either the giving or failing to give a written requested instruction or to the giving of "an erroneous, misleading, incomplete, or otherwise improper oral charge" unless written instructions are requested by the trial judge. There is no other result possible without violating the language of Rule 14 and the reason behind its adoption.

ON APPLICATION FOR REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
By an application for rehearing and a brief in support thereof, counsel for appellee seek to invoke Rule 39(k) of Alabama Rules of Appellate Procedure by stating the following:
"Pursuant to Rule 39(k), the State moves the Court to amend its opinion to reflect that in its original brief, the State argued in great detail that the evidence did not justify a charge on lesser included offenses."
Notwithstanding our view that Rule 39(k) does not cover a situation in which a court of appeals has incorrectly stated the legal contentions of the party against whom an opinion was rendered but has not made an incorrect statement in its "Statement of Facts," we hereby acknowledge an incorrect statement by the writer of the opinion on original submission, wherein he stated, "It seems that counsel for appellee does not contend that the evidence in the case failed to furnish a basis for jury determination that defendant was guilty of either of the two lesser offenses only." We now state that the writer regretfully overlooked the legal contention made in brief of counsel for appellee on original submission and hereby complies with the request of appellee by stating that in the brief of counsel for appellee on original submission was the following:
"There is not one shred of evidence to support a charge on either manslaughter or criminal negligence in the case at bar. Evidence that the pistol discharged accidentally would not justify a charge on either manslaughter or criminal negligence under the facts of this case. The trial court would have properly refused a written charge on either of these offenses. Under the defendant's version of the death, neither an act of passion, nor an intent to kill, nor an act of negligence was involved in the circumstances leading to Askins' death. Under the State's evidence, the defendant was guilty of an unprovoked irrational murder, Reynolds v. State, 346 So.2d 979 (Ala.Cr.App.), writ denied, 346 So.2d 986 (Ala.1977); Thornton v. State, 369 So.2d 63 (Ala.Cr.App.1979); Clark v. State, 333 So.2d 85 [885] (Ala.Cr.App.1976), cert. denied, 333 So.2d 89 [890] (Ala.1976); Shepard v. State, 51 Ala.App. 66, 282 So.2d 418 (Ala.Cr.App.1973). The trial court need not charge on theories of law which are abstract and not applicable to the facts presented to the jury.
"Even considering the defendant's version of the crime, there was no evidence that the deceased was the aggressor in the altercation which led to his death. Matkins' testimony was only that the deceased cursed and asked him to let his wife have her seat; that the deceased said he was not `trying to get smart;' that the deceased did not pull a weapon on him (R. p. 117); that no one threatened him (R. p. 117); that Matkins pulled out a pistol in order `to fist fight' (R. p. *199 108); and that the deceased grabbed his arm when he pulled the pistol out. (R. p. 109.)
"Evidence that a scuffle ensued under those circumstances and that the pistol accidentally discharged was not sufficient to support the lesser included offense of manslaughter or criminally negligent homicide. The trial court would have properly refused written requested charges on either of those offenses. Shields v. State, 397 So.2d 184 (Ala.Cr. App.), writ denied, 397 So.2d 189 (Ala. 1981); Lindsey v. State, 367 So.2d 572 (Ala.Cr.App.), writ denied, 367 So.2d 574 (Ala.1978); Cooper v. State, 364 So.2d 382 (Ala.Cr.App.), writ denied, 364 So.2d 387 (Ala.1978).
"A person commits the crime of manslaughter if he recklessly caused the death of another person or if he caused the death of a person under circumstances which would constitute murder except that he caused the death due to a sudden heat of passion. Code of Alabama, 1975, § 13A-6-3. Criminally negligent homicide occurs when a person caused the death of another by criminal negligence. In the case at bar, the defendant was guilty of murder, or, if the jury believed that the pistol accidentally discharged, he was innocent of any crime.
"The Court charged the jury concerning `accidental homicide.' (R. P. 131) The Court instructed the jury that if `a shot is accidentally fired and kills a person then the person accidentally firing the shot cannot be convicted.' (R. p. 131). The Court charged, `It is the law that homicide by accident is excusable and if by misfortune or misadventure, while in the performance of the lawful act, exercising due care and without intention to do harm, human life is taken, the law excuses it because it was accidental, done without intent.' (R. p. 131). This charge adequately covered the defendant's theory of the case.
"There are extremely important differences between Binion v. State, 57 Ala. App. 234, 327 So.2d 729 (1976), cert. denied, 295 Ala. 391, 327 So.2d 732 (1976), and this case. `In Binion, the defendant testified that the victim was attempting to pull a pistol from his pocket at the time the fatal shot was fired.' In the case at bar, there was no evidence that the victim attempted to assault defendant. The defendant himself testified that the victim answered `no' when he asked him whether the victim was `trying to get smart with him.' The defendant testified that he wanted to `fist fight' but he never testified that he was in fear of the victim or that the victim made any indication that he intended to attack him. The defendant's only contention was that the pistol discharged accidentally after he had drawn the weapon and the victim and his brother apparently attempted to take it from him. No reasonable inference of self-defense can be drawn from the defendant's testimony."
We now proceed to discuss each paragraph of that portion of appellee's brief on application for rehearing that constitutes a quotation from appellee's brief on original submission in the order of their presentation in the brief of counsel for appellee in support of its application for rehearing, as well as in its brief on original submission.
As to the first paragraph of the stated portion of brief of counsel for appellee quoted above, we disagree with the first sentence in its entirety. As to the second sentence we think the word, "accidentally" requires further consideration by us, which we will endeavor to give it hereafter in this opinion. As to the third sentence, we cannot say whether the trial court would have "refused a written charge on either of these offenses," but we are of the opinion, as indicated in our opinion on original submission, that such charge would not have properly been refused. As to the fourth sentence, we cannot say with certainty what "defendant's version of the death" was, as we do not know what counsel for appellee means by "defendant's version of the death." As to the fifth sentence, we think the "State's evidence" was sufficient to present a jury issue as to whether "defendant was guilty of an unprovoked, irrational *200 murder," which is not to say, however, that a jury issue was not presented as to whether defendant was guilty of a lesser included offense. The authorities cited in the first paragraph of brief of counsel for appellee do not support appellee as to its contention, as shown particularly by the opinion in Reynolds v. State, the first case cited by appellant in said paragraph, wherein at 346 So.2d at 985, the following is stated:
"... The refused charge was properly refused because it ignored the question of whether the appellant was intentionally pointing the rifle at the deceased. If she was, then she would be guilty of at least involuntary manslaughter, even though the firing of the rifle was without purpose or motive, but was accidental. Campbell v. State, 13 Ala.App. 70, 69 So. 322 (1915); Fitzgerald v. State, 112 Ala. 34, 20 So. 966 (1895); Bynum v. State, 8 Ala.App. 79, 62 So. 983 (1913); Henderson v. State, 98 Ala. 35, 13 So. 146 (1893)...."
As to the second paragraph of the stated portion of brief of counsel for appellee quoted above, we are in substantial agreement with each sentence thereof, but we are not in agreement with the legal conclusions of attorney for appellee in either of the two sentences constituting the third paragraph thereof. In our opinion, the authorities cited by counsel for appellee in said paragraph do not support appellee's contentions contained therein. We are in agreement with the first and second sentences of the fourth quoted paragraph of appellee's brief, but we are not in agreement with the last sentence thereof, which we think is not precise by reason of the use of the word "accidentally" without clarification of the meaning of that ambiguous word.
We agree with each of the first three sentences of the fifth paragraph we have quoted above from brief of counsel for appellee, wherein quotations are expressly taken from the trial court's oral instructions to the jury. However, we are not in agreement with the conclusions of the trial court as to the legal effect of an "accidental homicide" as expressed in the second and third sentences of said paragraph. As to the last sentence of said paragraph, we are of the opinion that the charge of the trial court "adequately covered" only "the defendant's theory of the case" as to the express charge of murder, but that it did not cover the defendant's contention that defendant was guilty only of one of the two lesser included offenses, manslaughter and criminally negligent homicide.
We are not in disagreement with any of the sixth and final paragraph that we have quoted from brief of counsel for appellee other than the statement therein that "defendant's only contention was that the pistol discharged accidentally after he had drawn the weapon and the victim and his brother apparently attempted to take it from him." As to the last qutoed statement, we are of the opinion that it was defendant's contention that the "pistol discharged accidentally" in one of the senses of the ambiguous noun "accident" or adverb "accidentally," but that it was also defendant's contention that a jury question was presented as to whether defendant was guilty only of one of the two mentioned lesser included offenses, manslaughter and criminally negligent homicide.
It should also be noted that the trial judge in effect charged the jury that the verdict for any lesser included offense was not permissible. The trial court stated to the jury:
"I will send to you the proper forms of verdict in the morning to consider. If you are convinced beyond a reasonable doubt that the Defendant is guilty, it is your duty to convict him and the form of your verdict would be: `We, the Jury, find the Defendant guilty of murder.' On the other hand, if you are not convinced beyond a reasonable doubt of the Defendant's guilt likewise it would be your duty to acquit him and the form of your verdict would be: `We, the Jury, find the Defendant not guilty.' As I say, I will prepare those forms of verdict and send them to you during the course of *201 your deliberations in the morning. I will not disturb you again. You may find it helpful in the morning to select initially one of your number to act as foreperson to moderate your discussion and to sign the verdict and to return it when you have reached a verdict. Your verdict must be unanimous. That is, all twelve of you must be in agreement about your verdict and you don't attempt to return a verdict until you are all twelve in agreement about it."
We adhere to the conclusion reached in our opinion on original submission that the judgment of the trial court should be reversed and the cause remanded.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.